No. 26-_____

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

IN RE DOE DEFENDANTS

*Petitioners*,

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA,

*Respondent,*

TED ENTERTAINMENT, INC.,

*Real Party in Interest.*

On Petition for Writ of Mandamus to the
United States District Court
for the Northern District of California
No. 3:25-mc-80296-SK
Hon. Sallie Kim

_____

## PETITION FOR WRIT OF MANDAMUS

_____

Karl S. Kronenberger
Jeffrey M. Rosenfeld
Leah Rosa Vulić
KRONENBERGER ROSENFELD, LLP
548 Market St. #85399

San Francisco, CA 94104
(415) 955-1155
karl@kr.law
jeff@kr.law
leah@kr.law

*Attorneys for Petitioners*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

STATEMENT OF JURISDICTION..................................................2

ISSUES PRESENTED.........................................................................3

RELIEF SOUGHT................................................................................4

STATEMENT OF FACTS ...................................................................4

    A.    H3, r/H3Snark, and Does' Anonymous Political Speech ........................4

    B.    *Nuke* and Countdown: Highly Political and Controversial Works ..........6

    C.    Discussion of *Nuke* and Countdown on r/H3Snark: the Megathreads.....7

    D.    The Underlying Lawsuit: TEI's Suit against Denims. ...........................10

    E.    TEI's Parallel Copyright Lawsuits ...........................................................11

    F.    TEI's Selective and Pretextual Enforcement of its Copyrights .............11

    G.    Does Shut Down the Subreddit .................................................................12

    H.    Does' Motion to Quash and the District Court's Order .........................13

    I.    Use of the Order in the Underlying Fair-Use Proceeding......................18

ARGUMENT .......................................................................................19

    I.    The district court's Order is erroneous as a matter of law. ...................20

            A. The Order failed to apply the correct legal standard...............20

                1. TEI's Subpoenas would have been quashed under *Highfields*...................................................................21

B. The Order failed to apply controlling authority. ......................24

C. The Order's refusal to consider fair use is clear error.............26

    1. The Order adopted *Moneybags'* framework but omitted the fair use analysis.......................................................26

    2. Fair use is a threshold requirement for finding infringement.................................................................27

D. The district court erred by failing to consider the First Amendment generally and failing to balance the equities.......29

    1. The nature of Does' speech demanded First Amendment consideration.............................................................30

    2. The Court's framework eviscerates First Amendment considerations entirely.................................................30

    3. Does' concrete harm outweighs TEI's pretextual copyright claims............................................................32

II.    Does will be irreparably harmed without the requested relief. ..............33

III.    Does have no other adequate means to obtain relief. .............................34

IV.    The district court's Order is an oft-repeated error manifesting persistent disregard of the federal rules. ................................................................35

V.    The Order raises new and important problems, or issues of law of first impression.......................................................................................35

CONCLUSION ........................................................................................36

iii

# TABLE OF AUTHORITIES

Page(s)

**<u>Cases</u>**

*A&M Recs., Inc. v. Napster, Inc.*,

239 F.3d 1004 (9th Cir. 2001).............................................................................. 28

*Art of Living Found. v. Does 1-10*,

No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011).......Passim

*Barnes v. YouTube, Inc.*,

No. 25-CV-05901-VKD, 2026 WL 412470 (N.D. Cal. Feb. 13, 2026) .............. 29

*Bauman v. United States District Court,*

557 F.2d 650 (9th Cir. 1977)................................................................................. 3

*Columbia Pictures Industries, Inc. v. Fung*,

710 F.3d 1020 (9th Cir. 2013)............................................................................. 14

*Cox Commc'ns, Inc. v. Sony Music Ent.*,

146 S. Ct. 959 (2026) ...................................................................................Passim

*Doe v. Cahill*,

884 A.2d 451 (Del. 2005) .................................................................................. 33

*Highfields Capital Mgmt., L.P. v. Doe*,

385 F. Supp. 2d 969 (N.D. Cal. 2005) ........................................................Passim

//

iv

*In re Anonymous Online Speakers*,

   661 F.3d 1168 (9th Cir. 2011)...................................................................... 13, 20

*In re Cement Antitrust Litig. (MDL No. 296)*,

   688 F.2d 1297 (9th Cir. 1982)............................................................................ 36

*In re DMCA Section 512(h) Subpoena to Twitter, Inc.*,

   608 F. Supp. 3d 868 (N.D. Cal. 2022) ........................................................Passim

*In re DMCA Subpoena to Reddit, Inc.*,

   441 F. Supp. 3d 875 (N.D. Cal. 2020) ......................................................... 28, 25

*In re Kirkland*,

   75 F.4th 1030 (9th Cir. 2023) ..................................................................... 20, 27

*In re Williams-Sonoma, Inc.*,

   947 F.3d 535 (9th Cir. 2020)......................................................................... 3, 33

*Lenz v. Universal Music Corp.*,

   815 F.3d 1145 (9th Cir. 2016)............................................................................ 28

*Perfect 10, Inc. v. Amazon.com, Inc.*,

   508 F.3d 1146 (9th Cir. 2007)............................................................................ 28

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,

   494 F.3d 788 (9th Cir. 2007)............................................................................. 14

*Perry v. Schwarzenegger*,

   591 F.3d 1147 (9th Cir. 2010)........................................................................... 20

v

*Reno v. ACLU,*

   521 U.S. 844 (1977) ................................................................................ 33

## Statutes

17 U.S.C. §107 ........................................................................................... 28

17 U.S.C. §101 ............................................................................................. 2

28 U.S.C. §636(c)(1) ............................................................................. 2, 34

28 U.S.C. §1291 ........................................................................................ 34

28 U.S.C. §1651(a) ............................................................................... 3, 34

## Rules

Fed. R. Civ. P. 45 ................................................................................. 2, 17

Fed. R. Civ. P. 45(d)(3) ............................................................................ 12

## INTRODUCTION

This petition arises from a district court order denying Petitioners Movants/ Defendants' ("Does") motion to quash subpoenas issued by Plaintiff Ted Entertainment, Inc. ("TEI") seeking identities of anonymous critics. TEI's subpoenas are part of a three-lawsuit campaign using contributory copyright infringement to silence political critics.

The district court's order is clearly erroneous on multiple grounds. First, the court refused to apply the evidentiary standard Ninth Circuit precedent requires before unmasking anonymous speakers engaged in First Amendment-protected speech. Second, having borrowed a DMCA-derived framework to evaluate TEI's Rule 45 subpoenas, the court then excised the very component that gives that framework its constitutional legitimacy—fair use inquiry—deferring it to the underlying court. The court's reasoning has already backfired: TEI immediately seized on the order's incomplete *prima facie* findings to argue in the underlying proceeding that the named defendant's use was not fair use. Third, the court failed entirely to apply binding Supreme Court authority clarifying the knowledge and intent required for contributory infringement. Fourth, the court reduced its equities balancing to a single observation, i.e. that TEI needs Does' identities to proceed with its lawsuit. The district court's approach would swallow First Amendment protections in every case involving anonymous defendants.

1

This case presents all five *Bauman* factors for mandamus relief. Does have no adequate alternative remedy; the harm at issue, *i.e.* the permanent loss of anonymity to a plaintiff that has publicly threatened to destroy their lives, is irreversible and not correctable on appeal. The order is clearly erroneous; the district court has been reversed before for the same category of error in an unmasking subpoena case; and the petition raises issues of first impression, including: whether a court must determine fair use before compelling disclosure of anonymous speakers' identities in a copyright case; and whether a plaintiff issuing an unmasking subpoena in a copyright infringement claim must establish the elements of its claim with competent evidence.

Does respectfully request that this Court issue a writ of mandamus directing the district court to vacate its order and quash TEI's subpoenas.

## STATEMENT OF JURISDICTION

This is a civil action in which the district court had original jurisdiction pursuant to Fed. R. Civ. P. Rule 45. The underlying action was brought pursuant to the Copyright Act, 17 U.S.C. §§101, *et seq*. The action involves Does' First Amendment rights to anonymous speech.

Does have filed a concurrent Notice of Appeal. The appealability of an order denying a motion to quash third-party subpoenas entered by a magistrate judge with full consent jurisdiction under 28 U.S.C. §636(c)(1)—and separately, whether

2

such an order is immediately appealable under the collateral order doctrine or the *Perlman* exception—presents unsettled questions this Court need not resolve to grant relief here. Does file this petition protectively to ensure timely relief regardless of how this Court resolves jurisdiction over the appeal.

This Court has authority to issue the writ under the All Writs Act, 28 U.S.C. §1651(a), and Federal Rule of Appellate Procedure 21. *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 538 (9th Cir. 2020); *Bauman v. United States District Court, 557* F.2d 650 (9th Cir. 1977) ("*Bauman*").

## ISSUES PRESENTED

1.      Whether mandamus or, alternatively, appellate jurisdiction lies where an order denying a motion to quash identity-revealing subpoenas entered by a consent magistrate judge will irreversibly disclose anonymous speakers' identities.

2.      Whether the district court clearly erred by categorically exempting a copyright-labeled unmasking subpoena from the heightened evidentiary standard that Ninth Circuit precedent requires when the speech at issue is criticism, commentary, or political debate, regardless of the plaintiff's claim.

3.      Whether the district court clearly erred by borrowing the DMCA-subpoena framework to evaluate a contributory copyright claim against anonymous speakers while simultaneously declining to conduct the fair-use analysis.

4.      Whether the district court clearly erred by crediting allegations of

3

knowledge and material contribution to infringement where Does' uncontested evidence contradicted those allegations.

5.    Whether the district court clearly erred by treating the plaintiff's need to identify Doe defendants as satisfied by a pleading inquiry, when any standard sufficient to protect First Amendment rights to anonymous speech requires an independent evidentiary showing.

## RELIEF SOUGHT

Petitioners request a writ of mandamus directing the United States District Court for the Northern District of California ("NDCA") to vacate its order dated April 29, 2026 (D.E. 45[1] ("Order")) denying their Motion to Quash Subpoenas to Reddit, Inc. and Discord, Inc., and any other relief this Court deems just and proper.

## STATEMENT OF FACTS

**A.    H3, r/H3Snark, and Does' Anonymous Political Speech**

The H3 Podcast ("H3 Podcast") is a YouTube show hosted by Ethan and Hila Klein (the "Kleins") and produced and distributed through the Kleins' company, TEI. (D.E. 7, Ex. 1 ("Compl."), ¶¶12, 15; D.E. 1 ("MTQ") at 3:1-17.) The H3 Podcast covers controversial political topics, pop culture, and online

---

[1] Unless otherwise indicated or defined, citations refer to the docket entry (D.E.) of the NDCA; video exhibits are not submitted but are available upon request.

4

"drama." (Compl. ¶12; MTQ 3:1-17.) The H3 Podcast has devoted significant attention to the conflict in the Middle East. (Compl. ¶¶25, 27.) Ethan Klein previously co-hosted the "Leftovers" podcast with Hasan Piker ("Piker"), a political commentator; however, their relationship ended amid a public dispute over the Israeli-Palestinian conflict. (MTQ 3:8-17.)

Reddit is an online discussion platform comprising user-created communities, designed to facilitate candid conversations in significant part through user anonymity. (MTQ 3:24-26.) Reddit users participate in topic-specific "subreddits," moderated by unpaid volunteers who set and enforce community rules, remove inappropriate content, and facilitate discussion in accordance with Reddit's policies. (MTQ 3:26-4:4.)

The r/H3Snark subreddit ("Subreddit") was created in April 2023 as a moderated forum for critics of Ethan Klein and the H3 Podcast. (MTQ 4:5-6.) The Subreddit became a refuge for "fallen fans" who had been banned from H3's official subreddit after posting critical comments; and served as a space where current and former fans of the H3 Podcast could discuss the Kleins, their political views, and political and current events candidly without fear of retaliation. (MTQ 4:5-25.) Its content included anonymous discussions of Ethan Klein's conduct and commentary, including discussions about the ongoing conflict in the Middle East. (MTQ 4:9-11.)

Does were moderators of the Subreddit, who enforced rules to foster constructive commentary and prohibit harassment. (MTQ 4:14-25.) Does sought to comply with copyright and fair use principles by removing infringing content, updating moderation policies, and implementing an automated copyright disclaimer that appeared on every post ("AutoMod Disclaimer"). (MTQ 4:26-5:5.) Does were never compensated for their roles as moderators. (MTQ 4:1.)

**B.**     ***Nuke* and Countdown: Highly Political and Controversial Works**

Beginning in December 2024, the Kleins created *Content Nuke: Hasan Piker* ("*Nuke*"), which they describe as a "tragi-comic documentary" critiquing Piker, his role in public discourse on the Middle East, and the livestreaming platform Twitch. (Compl. ¶¶38, 40.) *Nuke* largely comprises facts, historical events, and news reporting rather than original narrative or fictional content. (Compl. ¶40.a-g & Exs. D, E.) Six of its seven sections are framed as political analysis or commentary. (Compl. ¶40.) TEI even characterizes *Nuke* as a work of political commentary and documentary-style analysis. (Compl. ¶40.a-g.)

TEI registered *Nuke* with the United States Copyright Office ("USCO") on January 27, 2025[2], four days before its public release. (Compl. ¶38.) TEI excluded from its registration "preexisting footage, preexisting photograph(s), and

---

[2] TEI had never before registered any of its videos with the USCO.

preexisting music"; these elements make up the vast majority of *Nuke*. (MTQ 6:17-20; D.E. 7 Ex. 5; D.E. 8 ¶¶136-143.)

TEI promoted *Nuke* extensively on the H3 Podcast, building anticipation for its late-January 2025 release. (Compl. ¶43.) As TEI's own promotion stoked public interest, there was a corresponding interest among viewers and critics to comment on and criticize *Nuke* in spaces where they would not be silenced or attacked. (MTQ 6:25-26.) By that time, TEI-controlled spaces, such as the H3 Podcast YouTube channel, had grown hostile toward criticism, often banning critics. (MTQ 6:26-28.)

On the day of *Nuke*'s release, the H3 Podcast aired its regular live show themed around the film's debut ("Countdown") (Compl. ¶41 & Ex. F.) TEI sought a copyright registration for Countdown only after discovering fellow content creator Alexandra Marwa Saber ("Denims") "reacted" to it. (Compl. ¶42.) "Reaction" videos are common in online content creation. (*See* MTQ 7:7-9; D.E. 16 at 3:4-6.)

**C.      Discussion of *Nuke* and Countdown on r/H3Snark: the Megathreads**

Because of TEI's promotion of *Nuke*, the Subreddit saw a sharp increase in user submissions about anticipated third-party reactions to it. (MTQ 7:9-12.) Content creators, including Denims, publicly announced that they planned to live-react, or provide real-time commentary while viewing *Nuke*. (MTQ 7:7-9.)

7

To manage this activity surge, centralize discussion and commentary, and facilitate moderation, Does created the "Megathreads." (MTQ 7:12-16.) Megathreads are standard organization posts that aggregate discussion about a particular event, allowing moderators to channel conversations into a single location.[3] (MTQ 7:14; D.E. 8 ¶6.) The Megathreads linked to the Twitch and YouTube landing pages for users that had announced plans to react to *Nuke.* (MTQ 7:12-18, 8:8-9; Compl. Exs. G-I.) The Megathreads were meant to facilitate lawful, real-time commentary and critique; the links did not include unauthorized mirrors, VODs (videos on demand), or download links. (MTQ 8:8-12.) Each Megathread included the AutoMod Disclaimer. (MTQ 8:8-12.)

**First Megathread:** The First Megathread (Compl. Ex. G) was posted on January 30, 2025, the day before *Nuke* and Countdown were released. (MTQ 7:19-24.) The Megathread announced a centralized place to discuss *Nuke*, invited users to "react/comment/update," and reminded users to follow the Subreddit's rules, including those governing copyright and fair use. (Compl. Ex. G; MTQ 7:19-24.) The Megathread included links to the homepages of creators who had indicated

---

[3] Does published megathreads for each H3 Podcast episode to centralize discussion, hyperlinking directly to H3's own YouTube broadcasts. (D.E. 8, ¶¶6, 32.) Does' AutoModerator thus automatically posted a link to Countdown as part of the Subreddit's practice. (D.E. 8 ¶32, fn. 36.)

8

they planned to stream reaction videos, including a link to Denims' Twitch channel. (Compl. Ex. G; MTQ 7:19-24.)

**Second Megathread:** The second Megathread (Compl. Ex. I) was posted on January 31, 2025, three minutes after the Countdown episode began. (MTQ 8:3-6.) It linked to Denims' Twitch channel and included a pinned moderator comment providing links to the other streamers who had said they would react to *Nuke*. (MTQ 8:3-6; Compl. Ex. I.)

**Third Megathread:** The third Megathread (Compl. Ex. H) was posted three minutes after *Nuke* was released. (MTQ 8:1-3.) It **embedded TEI's own live broadcast of *Nuke* as a thumbnail and link as the most prominent content**; it offered "Places to watch *reactions* to this video" (emphasis added), listing streamers who had indicated they would react with transformative commentary to *Nuke*. (MTQ 8:1-3; Compl. Ex. H; D.E. 23 ¶¶17-17.10.) This Megathread placed TEI's own source of *Nuke* first, automatically directing users who clicked on the embedded thumbnail to TEI's YouTube upload of *Nuke*. (MTQ 8:1-3; Compl. Ex. H; Reply 6:4-10; D.E. 23 ¶¶17-17.10.)

**Does' Lack of Involvement in Reaction Videos:** Does did not coordinate with Denims regarding her decision to react to *Nuke*. (MTQ 9:25-26.) Does did not watch Denims' stream, or any other live reaction stream to *Nuke*. (MTQ 8:13-14, 9:24.) Thus, Does could not have known about the content of any streamer's

reaction video. (MTQ 17:18-20.)

**No Notice of Alleged Infringement from TEI:** TEI did not notify Does that it believed any reaction stream was infringing. (MTQ 9:26-10:2.) TEI did not comment on any Megathread, send a ModMail message through Reddit's platform, request removal of any links, or issue any DMCA takedown notices, even though its attorney was monitoring the Subreddit. (MTQ 9:26-10:2; D.E. 16 at 7:16-8:1; D.E. 16-1 ¶¶35, 38-39.) Accordingly, Does did not know of specific infringement by Denims or any other streamer. (MTQ 9:26-10:2; 17:10-18:3.)

## D. The Underlying Lawsuit: TEI's Suit against Denims.

On June 19, 2025, TEI filed the underlying lawsuit against Denims and Does 1-10, Case No. 2:25-cv-05564-WLH-PD, in the Central District of California ("CDCA") (the "Denims Action"). (Compl.)  TEI alleged that Denims directly infringed its copyrights in *Nuke* and Countdown ("Work(s)"), by playing the Works during her Twitch stream, and pausing them to criticize and comment on them. (Compl.) TEI admits that Denims' use of the Works was "highly transformative." (Compl. ¶70.o.)

TEI also alleges that Does contributorily infringed TEI's copyrights in the Works by publishing the Megathreads. (Compl. ¶44.) According to TEI, by "promot[ing]" Denims' stream, Does induced, caused, and/or materially contributed to Denims' alleged infringement. (Compl. ¶¶2-3, 44, 83-87.)

10

Shortly after filing, TEI stipulated with Denims to allow TEI to serve subpoenas ("Subpoenas") on Reddit and Discord to obtain Does' identifying information. (D.E. 7 Exs. 8-9.) The CDCA court granted the stipulation. (D.E. 7 Ex. 9.) The CDCA did not issue any findings or analysis of the standards governing unmasking anonymous speakers. (D.E. 7 Ex. 9.)

**E.      TEI's Parallel Copyright Lawsuits**

The same day TEI filed the Denims Action, it filed two nearly identical copyright infringement lawsuits against other streamers who had reacted to *Nuke*, again naming Does as alleged contributory infringers: *Ted Entertainment, Inc. v. Kacey Caviness and Does 1-10*, Case No. 4:25-cv-00459-BCW (W.D. Mo.) ("Kaceytron"); *Ted Entertainment v. Morgan Kamal Majed and Does 1-10*, Case No. 2:25-cv-05565-JFW-MAA (C.D. Cal.) ("Frogan").

**F.      TEI's Selective and Pretextual Enforcement of its Copyrights**

The day TEI filed its three lawsuits, Ethan Klein publicly described the release of *Nuke* as a "trap" for streamers, boasting that "the trap was set and it worked even better than I imagined." (MTQ 10:20-27.) Before making this statement, the Kleins had repeatedly denounced the Subreddit and their online critics. (MTQ at 5:7-10, 5:21-23.)

Ethan Klein has stated his intent that Does "lose everything that they care about and I will be the one who makes them lose those things"; that he "will spend

11

and go to any limit …to annihilate [Does], for any cost"; that he will "destroy [Does'] lives proudly and happily…and…stand proud on their fucking proverbial grave"; that he will "feast on the fucking ashes of the lives that I will ruin;" and "this is [his] dream come true." (MTQ 11:17-12:17; D.E. 7 Ex. 21; D.E. 8 ¶¶72.1, 73.1, 74.1, 175, 278; D.E. 23 ¶21.3.1.) With respect to identifying Does, he stated: "…what happens with that information, I don't know. The unfortunate thing is that court filings are all public, so if their private information shows up there, then I literally can't help it." (D.E. 8 ¶72.1; D.E. 7 Ex. 21.)

Other content creators reacted to *Nuke*. (MTQ 10:28-11:5; D.E. 16-1 ¶¶55-56.) Tellingly, streamer xQc, with roughly ten times Denims' following, reacted to *Nuke* and received about 94,000 viewers—more than double the peak viewership of Denims' stream. (MTQ 10:28-11:5.) But because xQc's reaction stream was favorable to *Nuke*, neither Ethan Klein nor TEI sued him. (MTQ 10:28-11:5.)

## G.    Does Shut Down the Subreddit

After the Kleins threatened to sue Does for defamation in February 2025 (post-*Nuke* but pre-lawsuits), Does placed the Subreddit on a temporary break. (D.E. 7 Ex. 18; D.E. 8 ¶¶146, 179, 197.3; D.E. 20 at 11:15-17.) Does then voluntarily closed the Subreddit permanently in May. (D.E. 7 Ex. 18.) Since then, Does have not publicly discussed the H3 Podcast or the Kleins; the silencing of this critical forum is already complete.

12

**H.  Does' Motion to Quash and the District Court's Order**

On September 22, 2025, Does opened a miscellaneous civil action in the NDCA and moved to quash TEI's Subpoenas pursuant to Fed. R. Civ. P. 45(d)(3). (D.E. 1.) In that motion, Does argued and submitted evidence as to:

(1)  **Heightened standard/First Amendment context.** Because TEI seeks to unmask anonymous political critics, and because of the political context of the Subreddit, the court was required to apply a heightened standard and demand a real evidentiary basis for each element of TEI's contributory infringement claim. (MTQ 13:1-16:5.) Does highlighted that the nature of the speech should be a driving force in choosing a standard for unmasking, and district court authority requiring a prima facie evidentiary showing and a meaningful balancing of equities in anonymity cases. *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011); *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005); *In re DMCA Section 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868 (N.D. Cal. 2022). (MTQ 13:1-16:5.)

(2)  **No knowledge of infringement.** TEI could not show that Does had actual knowledge that Denims' stream was infringing. (MTQ 16:19-18:3.) Does did not watch Denims' stream, received no notice from

13

TEI concerning any infringing stream, posted two of the Megathreads before *Nuke* was released, and linked to TEI's original upload of *Nuke* in the third Megathread. (MTQ 17:10-18:3.)

(3)   **No inducement or material contribution.** Creating pinned discussion threads that link to a streamer's public channel does not constitute inducement or material contribution under this Court's precedents. *See Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1032, 1034 (9th Cir. 2013); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007). (MTQ 18:4–20:4; D.E. 20 at 7:5–9:4.)

(4)   **Denims' stream was fair use.** Denims' reaction stream was a fair use of TEI's works. (MTQ 20:10-24:14; D.E. 20 at 9:20-10:21.) It was transformative, focused on commentary and criticism, and not a market substitute for TEI's own uploads. (MTQ 20:10-24:14; D.E. 20 at 9:20-10:21.) TEI offered no competent evidence to the contrary. (MTQ 20:10–24:14; D.E. 20 at 9:20–10:21.)

(5)   **The Megathreads were fair use.** The Megathreads constituted fair use. (MTQ 20:5-9; D.E. 20 at 9:5-19; Compl. Exs. G-I.) They contained no copies of TEI's works, organized critical discussion, and—in the only Megathread posted after *Nuke*'s release—directed

14

users to TEI's official upload. (MTQ 20:5-9; D.E. 8 ¶45; D.E. 20 at 7:7-10, 9:5-19; D.E. 23 ¶¶17-17.10.)

(6) **Severe, non-correctable harm from unmasking.** Does submitted specific evidence of the irreversible harm that would result if their identities were disclosed, and the burden of defending three simultaneous federal copyright suits brought by a plaintiff whose principal publicly vowed to "destroy [their] lives" and "feast on the … ashes of the lives that I will ruin." (MTQ 11:15-12:17; D.E. 8 *passim.*; D.E. 23 *passim.*)

TEI opposed the motion and submitted declarations confirming, among other things, that its counsel actively monitored the Subreddit at the time of the Megathreads, while declining to notify Does of the alleged infringement. (D.E. 16; D.E. 16-1 ¶¶35, 38-39; D.E. 16-2.) Does filed a reply with evidence rebutting TEI's declarations. (D.E. 20, 23.) TEI then objected to Does' reply evidence. (D.E. 24.)

On March 25, 2026, Does filed a Statement of Recent Decision regarding the Supreme Court's decision in *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959 (2026), which clarified the intent and substantial-non-infringing-use requirements for secondary copyright liability. (D.E. 35.)

The district court set a hearing, issued a notice of questions, and ordered the

parties to upload video exhibits. (D.E. 36–38, 40.) After the hearing and the video uploads, the court issued a written Order on April 29, 2026, denying the motion to quash in full. (D.E. 45.)

In that Order, the district court adopted an internally inconsistent framework that borrowed from DMCA unmasking cases while refusing to apply the fair-use inquiry those cases treat as essential. (D.E. 45.) The District Court's Order:

1) Held that *Highfields* does not apply because this is a copyright infringement case, but nonetheless purported to find an evidentiary basis for TEI's claims and "balance the equities" in deciding whether anonymous speakers could be unmasked. (Order at 4–11.)

2) Applied a *prima facie* pleading standard to evaluate TEI's showing of direct infringement by Denims and contributory infringement by Does, accepting allegations of ownership and copying without integrating fair use into that inquiry. (Order at 5–10.)

3) Refused to consider fair use in deciding whether TEI had made the requisite prima facie showing. Specifically, the district court:

   a. Acknowledged Northern District authority holding that, before a copyright claimant may compel disclosure of an anonymous speaker's identity, the claimant must show the challenged use was not fair use;

16

b. Held that requirement applies only in the DMCA-subpoena context, not on a Rule 45 motion to quash;

c. Therefore treated TEI's allegations of ownership and copying as sufficient to establish a prima facie case of direct infringement, leaving fair use entirely to the underlying action because "that issue will be litigated fully in another forum"; and

d. Did not address whether the Megathreads themselves were a fair use of TEI's Works (Order at 7–10).

4) Found a *prima facie* case of contributory infringement based on the conclusion that Does understood and facilitated "hatewatching" of TEI's works, without applying the requirements of *Fung* and *Cox* that secondary liability hinges on intent to foster infringement, shown by clear expression or a service tailored to infringement and incapable of substantial non-infringing uses, not mere knowledge. (Order at 8–10.)

5) Declined to address *Cox* at all, despite Does' Statement of Recent Decision, even though *Cox* clarified that secondary liability requires that a defendant intend its service be used for infringement—either through specific acts of encouragement or a service design geared to infringement without capability of significant non-infringing uses— and that mere knowledge is insufficient.

17

6) Concluded that TEI's need for identifying information outweighed Does' interest in anonymity, notwithstanding Does' evidence of "public exposure, real risk of retaliation[,] actual harm, and the financial and other burdens of defending the Action," because TEI could not otherwise identify, serve, and proceed against them. (Order at 10-11.)

## I. Use of the Order in the Underlying Fair-Use Proceeding

On March 2, 2026, upon stipulation by TEI and Denims, the CDCA court stayed the Denims Action pending resolution of Does' motion to quash, including any appeal. (D.E. 44.) On March 30, 2026, the CDCA court approved a limited carve-out to permit Denims to file a motion for partial judgment on the pleadings ("MPJOP") on whether her use of *Nuke* is fair use. (D.E. 44.) Under the stipulated schedule, the MPJOP was fully briefed by May 8, 2026, and is set for hearing on June 5, 2026. (D.E. 44.)

On May 1, 2026, two days after the Order, TEI filed its opposition and a request for judicial notice in the Denims Action. (CDCA D.E. 36, 37.) TEI urged the CDCA court to treat the Order as "adjudicative fact" and asserted that the Order's "findings concern the first and fourth fair use factor." (CDCA D.E. 37.) TEI specifically relied on the Order's "hatewatching" discussion and its statement that viewers watched Nuke "without giving any benefit to TEI" to argue that

18

Factor 1 favors TEI in Denims' MPJOP because the supposed purpose of Denims' stream was to provide a substitute viewing experience rather than criticism. (CDCA D.E. 36 at 4:19-25.) TEI cited the Order as proof viewers watched Denims' stream as a substitute for the original as proof of market substitution. (CDCA D.E. 36 at 5:9-11, 24:7-9.)

TEI went so far as to tell the CDCA that the Order "found that TEI alleged *and* proved that the H3Snark Mods directed potential viewers of *The Nuke* to view Denims' watch party as a substitute for the original" (emphasis in TEI's opposition), asking the CDCA to rely on that finding in adjudicating Denims' MPJOP. (CDCA D.E. 36 at 2:21-24.) In short, TEI is already using the Order's one-sided prima facie and "hatewatching" findings as substantive evidence against fair use in the forum the Order said would "fully" decide that issue.

## ARGUMENT

In *Bauman*, the Ninth Circuit established five factors to determine whether supervisory mandamus is appropriate. *Bauman*, 557 F.2d 650 (9th Cir. 1977). These factors are:

1. whether the petitioner has no other adequate means, such as direct appeal, to attain the requested relief;

2. whether the petitioner will be damaged or prejudiced in a way not correctable on appeal;

19

3. whether the district court's order is clearly erroneous as a matter of law;

4. whether the order is an oft-repeated error or manifests persistent disregard of the federal rules; and

5. whether the order raises new and important problems or issues of first impression.

*Id.* at 654-55. Not every factor need be present at once, but absence of the third factor, clear error, is dispositive. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010) ("*Perry*"). The *Bauman* factors are weighed holistically to determine whether, on balance, they justify the invocation of "this extraordinary remedy." *In re Kirkland*, 75 F.4th 1030, 1040-41 (9th Cir. 2023).

## I. The district court's Order is erroneous as a matter of law.

### A. The Order failed to apply the correct legal standard.

The District Court refused to apply the *Highfields* test because "*Highfields* involved claims for trademark infringement and unfair competition, not copyright law." Order at 4:23-5:3; *Highfields Capital Management, L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) ("*Highfields*"). That reasoning is irreconcilable with Ninth Circuit authority: "the *nature of the speech* should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011) (emphasis added) ("*Anonymous*").

20

Applying this reasoning, the court in *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *5-6 (N.D. Cal. Nov. 9, 2011) ("*AoL*"), a copyright case, held that *Highfields* governs when allegedly infringing conduct is accompanied by "critical, anonymous commentary" carrying substantial First Amendment value. Here, the Subreddit served as a forum for critics of Ethan Klein and the H3 Podcast that often spoke about political topics. (Compl. ¶¶25, 27; MTQ 4:5-11.) Similarly, Does created the Megathreads to facilitate lawful, real-time commentary and critique of TEI's Works. (MTQ 8:10-12.) This is the precise speech the *Highfields* test was designed to safeguard. Thus, the District Court erred by not applying *Highfields*.

### 1.    TEI's Subpoenas would have been quashed under *Highfields*.

Had the District Court applied the *Highfields* standard, as required by Ninth Circuit authority, it would have been required to quash the Subpoenas. In *Highfields*, the court held the relevant inquiry as requiring: (1) the plaintiff to "adduce competent evidence" of wrongful conduct causing real harm, and (2) then can the court "assess and compare the magnitude of the harms" on each side. *Highfields* at 974–75. If the district court had applied this test—as it was required to do—TEI would neither have cleared the evidentiary hurdle nor prevailed at the balance of harms, which favors Does. *First*, TEI adduced no evidence that Does

21

purported contributory infringement caused it real harm. Specifically, TEI failed to submit competent evidence: 1) that Denims engaged in the underlying direct copyright infringement, as opposed to a fair use, 2) knowledge of specific acts of infringement, more than generalized knowledge of the possibility of infringement, or 3) inducement or material contribution. The district court casually referenced TEI's "evidence," but it failed to undertake any independent evaluation of that evidence, and failed to consider Does' competing evidence. (Order at 9-10.) Thus, for example, the district court completely failed to consider whether there was any evidence of knowledge of specific acts of infringement. (*Id.*) Does' alleged wrongdoing consists entirely of posting Megathreads that linked to the public Twitch and YouTube landing pages of streamers who had already publicly announced plans to react to TEI's videos. (MTQ at 7–8.) The Megathreads contained no unauthorized copies, VODs, or download links, and each carried the AutoMod Disclaimer. (MTQ at 8.) In fact, Does did not watch Denims' stream, and could not have known whether her use was infringing. (MTQ at 8.) Does' actions are insufficient to satisfy the intent requirement for finding contributory liability for copyright infringement under *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 967 (2026) ("*Cox*"). Any reasonable review of the evidence shows that Does lacked knowledge of specific acts of infringement, and that Denims' underlying conduct was a fair use. The district court did not consider this evidence

22

as required under *Highfields*; instead, it adopted an Urban Dictionary definition of "hatewatching" to determine Does' liability. (Order at 9-10.)

*Second,* the balance of equities weighs strongly in favor of Does. Even if TEI adduced competent evidence, the second factor of *Highfields* weighs in favor of protecting Does' interest in remaining anonymous over TEI's need to proceed with its lawsuit. (Order at 10-11.) Contrary to the district court's analysis, this factor requires more than TEI needing Does' identities to litigate its case. Under *Highfields*, the district court must weigh "the extent of the harm to defendant's First Amendment and privacy interests" against the harm to the plaintiff, "in light of the strength of the underlying claim." *Highfields* at 980; *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022). Here, no such weighing occurred. The court accepted that TEI "cannot proceed" without the identities and stopped there—without considering the documented risk of harassment and doxing to Does. (MTQ at 11-12.) This harm is not speculative; TEI's principal has publicly expressed his intent to commit such harm. (MTQ at 11-12.)

The district court also failed to consider the broader chilling effect on anonymous political commentary in online communities. (Order at 10-11.) In *Highfields*, the court found the balance favored the anonymous speaker because "enforcing a subpoena in this kind of setting poses a real threat to chill protected

23

comment on matters of interest to the public." *Highfields* at 976. That concern applies here as Does' Subreddit is meant to foster a forum dedicated to criticizing TEI's content. (MTQ at 3-4.) Allowing TEI to unmask Does has already chilled criticism of online personalities that the First Amendment and *Highfields* are meant to protect.

**B.**     **The Order failed to apply controlling authority.**

In *Cox*, the Supreme Court held contributory infringement is only found if a service is intended to be used for infringement. *Id.* at 967. Intent for purposes of contributory infringement can be established in two ways. *See id.* First, if the party actively encouraged infringement through *specific acts. Id.* Second, if the service is tailored to infringement by not being capable of substantial or commercially significant non-infringing uses. *Id.*

The Supreme Court held Cox could not be held contributorily liable for its subscribers' infringement under this framework. *Id.* The Court found that Cox "neither induced its [internet service] users' infringement nor provided a service tailored to infringement." *Id.* The Court added that Sony failed to provide "evidence of express promotion, marketing, and intent to promote" infringement. *Id.* Further, the Court determined Cox's internet service was not tailored to infringement because it was capable of "substantial" or "commercially significant" noninfringing uses. *Id.* Indeed, the Court held that "[m]ere knowledge that a

24

service will be used to infringe is insufficient to establish the required intent to infringe" and that "contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Id.* at 968, 969.

The district court's Order failed to consider Does' contributory infringement under *Cox*. Instead, the district court used a two-part test where contributory infringement is found if a party: (1) has knowledge of infringement, and (2) either materially contributes to or induces that infringement. (Order at 8:25-9:6.) The district court determined Does' actions satisfied this test. (Order at 9:12-10:11.) In doing so, the district court summarily concluded that Does "knew Denims' 'group viewing session' infringed or intended to infringe TEI's copyrighted works and induced, caused and/or materially contributed to Denims' infringement." (Order at 9:11-16.)

The district court did not point to any "evidence of [Does'] express promotion, marketing, and intent to promote infringement" of TEI's Works. *Cox*, at 969. Nor could it. Does simply posted links to Denims' (and other online personalities') homepages in a Reddit discussion thread dedicated to criticizing TEI's upcoming works. (MTQ at 6-8.) Further, even if Does knew Denims intended to infringe TEI's Works, that alone is insufficient under *Cox*.

Accordingly, the District Court erred as a matter of law by not analyzing Does' contributory infringement under *Cox*.

25

**C.**   **The Order's refusal to consider fair use is clear error.**

Despite authority holding that a plaintiff must make a prima facie case that the infringement did *not* constitute fair use before allowing unmasking, the district court abdicated its responsibility to consider fair use to the CDCA at another time. (Order at 8.)

      **1.**   **The Order adopted *Moneybags'* framework but omitted a fair use analysis.**

The court adopted the three-part DMCA *Moneybags* framework from *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022) ("*Moneybags*"). (Order at 4-5.) The *Moneybags* framework requires: (1) notice and opportunity to defend anonymity; (2) a prima facie showing on the merits; and (3) a balancing of equities. *Id.*

But the district court failed to apply a crucial component of the test: "To make a prima facie case of copyright infringement for the purposes of obtaining a subpoena, [] a party must make a prima facie case that the infringing use did not constitute fair use." *Moneybags* at 879. While the Order acknowledged that Northern District authority requires exactly that analysis (Order at 7), the district court held that only applies to DMCA subpoenas, not on a Rule 45 motion to quash, because "the District Court in the underlying action will determine the issue of fair use" and "that issue will be litigated fully in another forum." (Order at 7-8.)

26

Accordingly, the Order failed to follow *Moneybags'* instruction that DMCA subpoenas incorporate Rule 45, and that the distinctions between the two do not require different tests. *See Moneybags* at 876-77.

Refusing to consider fair use in a Rule 45 unmasking subpoena directly conflicts with Northern District authority. In *Moneybags*, the party seeking unmasking argued against traditional unmasking tests (prima facie claim; balancing of equities) because it issued a DMCA subpoena and copyright law has some First Amendment protection "built in." *Moneybags* at 876-77. The court rejected this, finding it "raise[d] serious constitutional concerns." *Id*. The Order's distinctions here similarly fail; there is no substantive difference in the constitutional considerations applicable to a Rule 45 subpoena. *Moneybags* already addressed the Rule 45/DMCA subpoena distinctions: "None of these distinctions support application of a different test." *Moneybags* at 877. *See In re Kirkland*, 75 F.4th 1030, 1041 (9th Cir. 2023) (clear error where prior authority prohibits the lower court's action)

### 2. Fair use is a threshold requirement for finding infringement.

The Order held that for a Rule 45 unmasking subpoena, fair use is an "affirmative defense," and it only requires consideration for a DMCA subpoena. (Order at 7-8.) The Ninth Circuit has expressly rejected this characterization:

"Given that 17 U.S.C. § 107 expressly authorizes fair use, labeling it as an affirmative defense that excuses conduct is a misnomer." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1152 (9th Cir. 2016); *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 887 (N.D. Cal. 2020) (overturning magistrate's denial of motion to quash). *Lenz* concretely established that fair use is not just excused by the law, it is "wholly authorized" by it. 815 F.3d at 1152-53. The Order's holding that TEI established a prima facie case for infringement—without considering fair use—is clear error.

This is not a technicality. TEI brought a contributory infringement claim against Does, and it was required to adduce competent evidence of *each element* of its claim. *Highfields* at 975-76; *AoL* at **5-6 (applying more rigorous standard in copyright infringement case where nature of speech was critical). Contributory infringement requires an underlying act of direct infringement. *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n. 2 (9th Cir. 2001); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007). If Denims' use of the Works was fair, no direct infringement occurred. If no direct infringement occurred, contributory infringement is legally impossible. If contributory infringement is legally impossible, there is no cognizable copyright claim against Does—and no basis to unmask them at all. The Order's acceptance of bare allegations of ownership and copying as a "*prima facie*" case of direct

28

infringement, while reserving the fair use question for another day, is not merely procedurally irregular. It makes the Order's infringement conclusion untenable under the structure of copyright law itself.

### D. The district court erred by failing to consider the First Amendment generally and failing to balance the equities.

First, the Order held that *Highfields* was "not applicable to a copyright action," because *Highfields* involved claims for trademark. (Order at 4.) The court thus ignored Northern District authority applying a First Amendment balancing test to copyright infringement cases where First Amendment concerns are implicated, *AoL* at *4-10, and other authority the *District Court itself relied on* to establish the standard it applied. (Order at 5, citing *Barnes v. YouTube, Inc.*, No. 25-CV-05901-VKD, 2026 WL 412470, at *3 (N.D. Cal. Feb. 13, 2026) ("the Ninth Circuit requires a court to consider and weigh both the anonymous speaker's *First Amendment interest* and the subpoenaing party's need for identifying information." (emphasis added)).[4] The district court then erred in failing to balance the equities, despite recognizing that such balancing is required even in copyright cases.

//

---

[4] *Barnes*, uniquely, involved a DMCA subpoena issued in a full copyright infringement case. As discussed herein, this does not change the analysis.

1. **The nature of Does' speech demanded First Amendment consideration.**

The nature of the speech is a driving force in choosing a standard by which to balance the rights of anonymous speakers. *See Anonymous* at 1177. Further, while fair use *may* "wholly encompass[] free expression concerns in some cases, that is not true in all cases—and it is not true in a case like this…it is possible for a speaker's interest in anonymity to extend beyond the alleged infringement." *See Moneybags* at 877-78.

*Moneybags* raised a hypothetical analogous here: an anonymous blogger writes hundreds of blog posts criticizing a powerful political figure, Mr. X, and in one, includes a copyrighted image of Mr. X. *Id.* at 878. If Mr. X sued for copyright infringement, the court needs to consider interests on both sides, *even if* the post did not constitute fair use. *See id.* That applies here. Does moderated the Subreddit, a forum organized to critique a prominent public figure on matters of political controversy. (MTQ at 4.) The Order did not acknowledge, let alone weigh, this dimension. This is clear error.

2. **The Court's framework eviscerates First Amendment considerations entirely.**

The Order's "balancing" analysis is fatally flawed. The governing standard requires the Court to "balance the equities, weighing the potential harm to the party

30

seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim." *Moneybags* at 876. The Order acknowledged that Does submitted evidence of "public exposure, real risks of retaliation[,] actual harm, and the financial and other burdens of defending the Action." (Order at 10.) It then resolved the entire balance by finding TEI needed Does' identities to pursue its claims. (Order at 11.) That is not a balance. It is an observation that plaintiffs who sue anonymous speakers need to identify them, which is true of every case against unknown defendants, and distinguishes nothing.

The Order's rationale would eliminate First Amendment balancing from every copyright case involving anonymous defendants, despite *Moneybags*' clear warning that a speaker's interest in anonymity may extend beyond the alleged infringement. *Id.* at 878. Regardless of whether the court recognizes this as "*Highfields*" balancing, district courts in this Circuit routinely balance the equities to protect First Amendment rights, regardless of the claim's label. Indeed, the *Moneybags* court found that even a properly supported *prima facie* claim did not automatically resolve the equities in the plaintiff's favor, and in *that* case, which is factually similar to Does' case, the court held it would "quash the subpoena in a heartbeat." *Id.* at 881-83.

If naming anonymous speakers as defendants automatically satisfies the balancing inquiry, First Amendment balancing will never occur.

31

### 3. Does' concrete harm outweighs TEI's pretextual copyright claims.

Does established concrete harm from disclosure of their identities. TEI's principal publicly stated his intent to make Does "lose everything [] they care about," "destroy [] their lives proudly and happily…and…stand on their fucking proverbial grave," "feast on the fucking ashes of the lives that [he] will ruin," and that if Does' "private information shows up [in public]…[he] literally can't help it." (Facts, Section F, *supra*.) Does did not claim generalized anxieties about defending a lawsuit (or three); rather, Ethan Klein made targeted statements about releasing Does' identities, connected explicitly to the subpoena process. (*Id.*) The harm has already materialized: Does shut the Subreddit permanently and ceased all public comment. (D.E. 8 *passim.*; D.E. 23 *passim.*) The district court did not consider any of these chilling effects.

Evidence of TEI's pretext required further weighing. Unmasking subpoenas, regardless of the claim, require courts to ensure that the subpoena is a genuine effort to protect cognizable rights, not a mechanism to punish critics. *See Highfields* at 980 (enforcing a subpoena in this kind of setting poses a real threat to chill protected comment on matters of interest to the public); *see AoL* at *6-9. Ethan Klein publicly described *Nuke*'s release as a deliberate "trap." (MTQ at 10.) TEI then sued only critical reactions to *Nuke* while ignoring those who reacted

32

favorably and drew more viewers. (MTQ at 10-11.) During the district court proceedings, TEI revealed private identifying information of three of its critics in its own opposition papers. (D.E. 16-1 Exs. 60, 68, & p. 146.) The Order ignored this evidence entirely.

## II.   Does will be irreparably harmed without the requested relief.

The Order ignores that deferring consideration of a fair use analysis to the CDCA will eviscerate the First Amendment interests at stake. "It is clear that speech over the internet is entitled to First Amendment protection." *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005) (citing *Reno v. ACLU*, 521 U.S. 844 (1977)). Pertinently, First Amendment protection extends to anonymous speech online. *Id.*

As stated above, a fair use analysis—whether under *Highfields* or the DMCA framework—protects Does' right to remain anonymous by ensuring TEI can state a prima facie case of its claim against Denims and Does. *Supra* §I.C.1. Waiting for the CDCA to engage in the fair use analysis the district court should have undertaken will be too late. "[I]t is not enough to say that a speaker could assert their right to anonymity after their identity has been revealed; at that point, the damage will have been done." *Moneybags* at 877. This concrete, irreparable harm to Does cannot be remedied on appeal.

As this Court has recognized, mandamus is appropriate where a discovery order threatens disclosure that will moot the protected interest before appeal. *In re*

*Williams-Sonoma, Inc.*, 947 F.3d at 538-40.

### III. Does have no other adequate means to obtain relief.

Does have pursued all permissible methods of appellate review to avoid irreparable injury. Specifically, Does have filed a concurrent Notice of Appeal from the district court's Order. That appeal rests on three independent theories of appellate jurisdiction: (1) that because the magistrate judge presided over this proceeding with full consent jurisdiction under 28 U.S.C. §636(c)(1), the Order denying Does' motion to quash is an effectively final judgment directly appealable to this Court under 28 U.S.C. §1291; (2) that the Order is immediately appealable under the *Perlman* doctrine; and (3) that the Order satisfies the collateral order doctrine. Does file this petition protectively and concurrently because the appealability of an order denying a motion to quash a third-party subpoena entered by a consent-jurisdiction magistrate judge presents unsettled questions this Court need not resolve to grant relief here.

The critical point is that Does require both avenues—the concurrent appeal and this petition—precisely because neither alone is adequate. If this Court concludes it lacks appellate jurisdiction over the concurrent appeal, mandamus under 28 U.S.C. §1651(a) is the only remaining path. If this Court has jurisdiction over the appeal, mandamus is independently necessary because the irreparable harm will occur before any ordinary appellate schedule allows review.

34

Because Reddit and Discord may comply on a normal compliance timeline, and because no ordinary briefing schedule allows this Court to resolve even an expedited appeal before that compliance occurs, mandamus is the only mechanism capable of preventing the irreparable injury in time. Does have no other adequate means to attain this relief. Whether or not this Court ultimately concludes that appellate jurisdiction exists over the concurrent appeal, the first *Bauman* factor is satisfied: mandamus is the only practical avenue to preserve a constitutional interest that, once lost, is gone forever. This is precisely the extraordinary circumstance that justifies the supervisory writ.

## IV. The district court's Order is an oft-repeated error manifesting persistent disregard of the federal rules.

The magistrate judge who issued this Order was previously overturned in an unrelated case for failing to correctly analyze fair use in the context of a copyright infringement unmasking subpoena. *See In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875 (N.D. Cal. 2020). Repeating her errors, here, the magistrate judge refused to consider fair use and refused to balance the equities, as required by controlling authority. This factor supports mandamus relief.

## V. The Order raises new and important problems, or issues of law of first impression.

The Ninth Circuit has recognized that its "supervisory mandamus authority

is particularly appropriate when an important question of law would repeatedly evade review because of the collateral nature of the issues.*" In re Cement Antitrust Litig. (MDL No. 296)*, 688 F.2d 1297, 1304 (9th Cir. 1982). This case presents at least two important questions not squarely resolved by Ninth Circuit precedent but likely to reappear: (1) what *prima facie* showing is required when a plaintiff uses Rule 45, rather than the DMCA subpoena procedure, to identify anonymous critics based on a contributory copyright infringement claim, and (2) must a court consider fair use when analyzing a subpoena seeking to unmask an anonymous speaker issued under Rule 45.

The district court's reasoning in the Order is likely to recur, paving a dangerous roadmap allowing public figures (or anyone) to weaponize copyright law to silence anonymous critics. If left unaddressed, the Order's roadmap enables individuals to evade a pillar of the First Amendment protections afforded to anonymous speakers simply by bringing a copyright claim as a basis to unmask, and effectively silence, anonymous online critics.

## CONCLUSION

In conclusion, the district court dispensed with every unmasking test; failed to consider fair use; accepted speculation about the purpose and intent of allegedly infringing content that required closer scrutiny; determined TEI established contributory infringement while ignoring Supreme Court precedent; and discarded

36

Does' documented harms while ignoring the chilling effect on First Amendment-protected anonymous speech. This is clear error, and this Court should grant Does' writ.

Respectfully Submitted,

DATED: May 29, 2026          **KRONENBERGER ROSENFELD LLP**

s/ Leah Rosa Vulić
Karl S. Kronenberger
Jeffrey M. Rosenfeld
Leah Rosa Vulić

*Attorneys for Petitioners Does*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure ("FRAP") 21(d) and 32(g)(1), counsel certifies that this petition for writ of mandamus contains 7,716 words, excluding the items exempted by FRAP 32(f).

This Petition for Writ of Mandamus complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.

DATED: May 29, 2026          By:   s/ Leah Rosa Vulić

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing Petition for Writ of Mandamus and accompanying Appendix with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I further certify that a copy of this Petition and accompanying Appendix is being served on all parties to the district-court proceeding, and a copy is being provided to the Honorable Sallie Kim, United States Magistrate Judge, as required by Federal Rule of Appellate Procedure 21(a).

DATED: May 29, 2026                    By:   s/ Leah Rosa Vulić