

**KRONENBERGER ROSENFELD**

July 1, 2026

Molly C. Dwyer
Clerk of Court
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

**VIA ECF**

**RE:** ***Doe Defendants v. United States District Court for the Northern District of California, San Francisco***; **Case No. 26-3513**
**Notice of Supplemental Authority under FRAP 28(j) and Ninth Cir. R. 28-6**

Dear Ms. Dwyer:

Pursuant to Federal Rule of Appellate Procedure 28(j) and Ninth Cir. R. 28-6, Petitioners Doe Defendants provide notice of the Central District of California's recent decision in the underlying action, ***Ted Entertainment, Inc. v. Saber***, **No. 2:25-cv-05564-WLH-PD (C.D. Cal.)**, in which TEI alleges that streamer Alexandra "Denims" Saber directly infringed TEI's works *Content Nuke: Hasan Piker* ("*Nuke*") and *Countdown*. On June 29, 2026, the Central District court issued an order granting Denims' motion for partial judgment on the pleadings as to ***Nuke***, holding that Denims' use of Nuke is fair use as a matter of law under 17 U.S.C. §107. A copy of the Central District's order is attached hereto as **Exhibit A**.

Molly C. Dwyer
July 1, 2026
Page **2** of **3**

TEI issued subpoenas seeking identifying information for Reddit moderators who allegedly posted links to Denims' content. The Northern District Court denied the motion to quash, finding that TEI had sufficiently alleged contributory copyright infringement grounded in Denims' alleged direct infringement, without making a fair use determination. The Central District's fair-use ruling eliminates direct infringement as to *Nuke* and confirms that Denims' stream was "wholly authorized by the law," not infringement, as to that work. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153–54 (9th Cir. 2016).

This development bears directly on Petitioners' arguments that (1) the subpoena lacks a viable direct infringement predicate; (2) the omission of any fair-use analysis in the Rule 45 order was outcome-determinative; and (3) the First Amendment balance under *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 974-76 (N.D. Cal. 2005) and *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) weighs strongly against unmasking anonymous political speakers where the primary use at issue has now been adjudicated fair use.

The Central District's Order shows the clear error of the NDCA court: if fair use is not considered on an unmasking subpoena, anonymous speakers will be harmed by the disclosure of their identities when there is no legal claim sufficient to justify stripping their anonymity. Respectfully, Does ask the Court to consider the Central District's Order in its consideration of their mandamus petition.

Molly C. Dwyer
July 1, 2026
Page **3** of **3**

Respectfully submitted,

KRONENBERGER ROSENFELD, LLP

s/ Leah Rosa Vulić

Leah Rosa Vulić

## CERTIFICATE OF COMPLIANCE

I hereby certify that this letter complies with the word limit of Federal Rule

of Appellate Procedure 28(j) because the body of the letter contains 349 words.

s/ Leah Rosa Vulić
Leah Rosa Vulić

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing Notice

of Supplemental Authority under Federal Rule of Appellate Procedure 28(j) and

Ninth Cir. R. 28-6 with the Clerk of the Court for the United States Court of

Appeals for the Ninth Circuit by using the appellate ACMS system.

DATED: July 1, 2026                s/ Leah Rosa Vulić
                                   Leah Rosa Vulić

# Exhibit A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-05564-WLH-PD | Date | June 29, 2026 |
|---|---|---|---|
| Title | *Ted Entertainment, Inc. v. Alexandra Marwa Saber et al.* | | |

**Present: The Honorable**    WESLEY L. HSU, United States District Judge

| Claudia Garcia-Marquez | None |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:**    **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [35]**

The Court is in receipt of Defendant's Motion for Judgment on the Pleadings. (MJOP, Dkt. No. 35). The matter is fully briefed, and the Court heard oral argument on June 5, 2026. For the reasons explained herein, the Court **GRANTS** the Motion.

## I. BACKGROUND

Plaintiff Ted Entertainment, Inc. ("Plaintiff") sued Defendant Alexandra Marwa Saber ("Defendant" or "Denims").[1] (Compl., Dkt. No. 1). Plaintiff brings the following claims for relief: (i) Direct Copyright Infringement against Denims and (ii) Contributory Copyright Infringement against The H3Snark Mods[2]. (*Id.*). Plaintiff is "production company that produces content for social media, namely YouTube." (*Id.* ¶ 9). Defendant is an online streamer who releases content on social media platforms, namely Twitch. (*Id.* ¶ 10). Plaintiff, through its owner YouTuber Ethan Klein ("Klein"), filed this action seeking statutory damages against Defendant for her alleged livestreamed "reaction" to

---

[1] Plaintiff also sued Does 1-10.

[2] The H3Snark Mods are comprised of Does Nos. 1-10. The true names and exact location of Does Nos. 1-10 are presently unknown to Plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Plaintiff's "tragi-comic documentary" entitled Content Nuke: Hasan Piker ("The Nuke") posted on Plaintiff's YouTube channel on January 31, 2025. The Nuke centered on the allegedly controversial political ideologies of the "alt-left" Twitch streamer Hasan Piker ("Piker") regarding the Israel-Palestine conflict. (*Id.* ¶ 40).

The Nuke contains "original footage, highly edited montages, parodic skits and archival materials." (*Id.*). The Nuke can be divided into seven sections: (1) The Prologue; (2) the Twitch Parody Sketch; (3) the Houthi Section; (4) the Hezbollah Section; (5) the Hamas Section; (6) the Twitch Section; and (7) the Conclusion. (*Id.*). It contains original footage, highly edited montages, parodic skits and archival materials. (*Id.*). The first section "walks the audience through Ethan's thesis of The Nuke: that Hasan radicalizes his audience with genocidal and antisemitic terrorist propaganda," the second section involves a parody mocking how Twitch "has embraced Hasan's extremist rhetoric" and the third section focuses on how Piker allegedly radicalizes his audience by glorifying and disseminating Houthi propaganda. (*Id.*). The fourth section focuses on Piker's interactions with Hezbollah propaganda, the fifth section focuses on Piker's interactions with Hamas propaganda and the sixth section explores Twitch's alleged role in enabling Piker to violate Twitch's Community Guidelines. (*Id.*). In the final section, Klein presents the two motivations behind The Nuke, which are to "stop Hasan's infiltration of mainstream media" and "to hold Twitch accountable for enabling antisemitic and anti-Israel animus on its platform." (*Id.*). The film aims to "expose how Piker radicalizes people online to be antisemitic and anti-Israeli" and criticizes Twitch as a platform. (*Id.* ¶ 70.o).

On January 27, 2024, Plaintiff submitted its application to register The Nuke with the United States Copyright Office (the "USCO"). (*Id.* ¶ 38). On January 28, 2025, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

USCO received the deposit copy of The Nuke.  (*Id*.).  The registration number for The Nuke is PAu 4-256-429.

Throughout Defendant's live stream, Defendant provides commentary pertaining to criticism of The Nuke.  Indeed, Plaintiff states, "[w]here The Nuke seeks to expose how Piker radicalizes people online to be antisemitic and anti-Israeli, Denims attempts to use The Nuke for the exact opposite purpose: to radicalize her audience to be antisemitic and anti-Israeli, along with defending Hasan."  (Compl. ¶ 70.o).  During the live stream, Defendant contends that The Nuke resembles a "high school video project" or "middle school project."  (Live Stream Video, Dkt. No. 34, Ex. K at 1:21:14-40, 5:04:58-5:05:23).  Defendant also complains about the documentary's editing, the sources the documentary relies upon and supposed inconsistencies of Klein's statements (*id*., Ex. K at 2:41:05-07, 4:43:56-4:54:18) and that the video treats the audience as "morons" as it allegedly attempts to "trick" them (*id*., Ex. K at 3:46:23-37).  As further support of Defendant's commentary throughout the live stream, the Complaint states that Defendant "frequently makes comments that are later contradicted by The Nuke itself."  (Compl. ¶ 70.i).

Defendant offers further criticism of the subject documentary during her live stream.  (*See generally* Compl.).  Following one of the documentary creator's criticism of Piker's apologia of China's genocide of the Uyghurs, Defendant comments,  (1) on the treatment of Uyghurs; (2) "so much of American media is focused on pointing out how evil Chine is,"; (3) stating that disabled Americans lose disability benefits when they get married; (4) incarceration levels in the United States. (Live Stream Video, Ex. K at 1:25:43-1:36:05).  Additionally, during the live stream, Defendant (1) challenges Klein's perception of Piker's sentiments regarding the interaction between imports and the fleeing of Jewish people from Israel (Live Stream Video, Ex. K at 2:36:47-2:37:04); (2) disputes Klein's account of the events of the occurrence of sexual violence of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

hostages (Compl. ¶ 70.i.v; Live Stream Video, Ex. K at 3:33:49-3:35:34, 3:42:49-3:45:33); (3) critiques Klein's discussion of Twitch's enforcement and moderation decisions (Compl. ¶¶ 70.l.xv-xvii, 70.i.vi); and (4) discusses her perspectives on Zionism and Judaism (Live Stream Video, Ex. K at 4:33:48-4:34:02).[3]

On June 19, 2025, Plaintiff filed the Complaint. (*See generally* Compl.). On April 17, 2026, Defendant filed the instant Motion. (*See generally* MJOP.). Plaintiff filed its Opposition (Opp'n, Dkt. No. 36), to which Defendant filed her Reply (Reply, Dkt. No. 39). On May 1, 2026, Plaintiff filed its request for judicial notice. (RJN, Dkt. No. 37).

## II.    DISCUSSION

### A. <u>Legal Standard</u>

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c) ("Rule 12(c)"). A motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), and the "principal difference … is the time of filing." *Dworkin v. Hustler Magazine, Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989). The same standard applies to motions brought under either rule. *Id.* Thus, the issue presented by a Rule 12(c) motion is the same as that posed in a Rule 12(b)(6) motion: whether the factual allegations of the complaint state a plausible claim for relief. *Cafasso v. Gen. Dynamics C4 Sys*., 637 F.3d 1047, 1054-55 & n.4 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[3] Defendant provides additional timestamps for Defendant's "notable instances of pauses for commentary, reaction and analysis." S*ee, e.g.*, Live Stream Video, Ex. K at 1:48:00 to 1:50:30; 1:52:00 to 1:57:31; 2:23:00 to 2:29:00; 2:49:53 to 2:51:00; 3:13:00 to 3:15:24; 3:29:00 to 3:33:48; 4:29:58 to 4:34:05.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

544, 556 (2007)).

In evaluating a motion for judgment on the pleadings, the court must "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989)* ("For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false.").  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach*, 896 F.2d at 1550.

### B. Analysis[4]

Defendant moves for judgment on the pleadings as to Plaintiff's first claim for relief for direct copyright infringement as to The Nuke based on the Second Affirmative

---

[4] Plaintiff requests that the Court take judicial notice of specific documents and court records. (Request for Judicial Notice, Dkt. No. 37).  First, Plaintiff requests that the Court take judicial notice of a video entitled "The Big, The BOLD, The Beautiful," which was a reaction video to the work Bold Guy vs Parkour Girl in *Hosseinzadeh v. Klein*, 276 F.Supp.3d 34 (S.D.N.Y. 2017) (*Id*. at 1).  This video was filed with the District Court for the Southern District of New York in an action entitled *Hosseinzadeh v. Klein et al*. (Case No. 1:16-cv-03081-KBF).  (*Id*. at 2). Likewise, Plaintiff request the Court take judicial notice of a video entitled "Bold Guy vs Parkour Girl," which was the plaintiff's work in *Hosseinzadeh*.  (*Id*. at 1).  This video file was also filed in the *Hosseinzadeh*.  (*Id*. at 3).  The Court finds it appropriate to take judicial notice of the existence of these two video files, which are of public record.  It is axiomatic that courts "may take judicial notice of . . . matters of public record."  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 fn. 6 (9th Cir. 2006) (citing *Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)); *see also* Cal. Evid. Code § 452(d) ("Records of (1) any court of this state or (2) any court of record of the United States or of any state of the United States.").  Additionally, Plaintiff separately requests judicial notice of the complaint filed in *Ted Entertainment, Inc. v. Majed et al*. (C.D. Cal. Case No. 2:25-cv-05565-JFW-MAA) ("*Majed* Action") and the allegations contained therein, the complaint filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Defense of fair use, as pled in Defendant's Answer. (MJOP at 6). "[T]he 'fair use' doctrine . . . [is] an 'equitable rule of reason' that 'permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021) (quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)). "[T]he fair use of a copyrighted work… for purposes such as criticism, comment, news reporting, teaching…, scholarship, or research, is not an infringement of copyright." 17 U.S.C.A § 107. The "four non-exclusive factors" courts consider when determining fair use are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

---

in the action entitled *Ted Entertainment, Inc. v. Caviness et al.* (W.D. Mo. Case No. 4:25-cv-00459-BCW) ("*Caviness* Action") and the allegations contained therein, the video of the watch party of The Nuke at issue in the *Majed* Action, which was filed as Exhibit H with this instant action's Complaint and the April 29, 2026 order by Honorable Sallie Kim of the Northern District of California denying the motion to quash of the Doe defendants in the miscellaneous action entitled In re Subpoenas to Reddit, Inc. and Discord, Inc. (Case No. 3:25-mc-80296-SK). The Court finds these filings subject to judicial notice. *See* Cal. Evid. Code § 452(d) ("Records of (1) any court of this state or (2) any court of record of the United States or of any state of the United States."). Lastly, Plaintiff requests the Court to take judicial notice of the video file, attached as Exhibit H, to the complaint in *Caviness*, which is a video file of the watch party at issue in that case. Likewise, the Court finds these filings as subject to judicial notice. *See* Cal. Evid. Code § 452(d) ("Records of (1) any court of this state or (2) any court of record of the United States or of any state of the United States."). Plaintiff has not asked the Court to take judicial notice of the truth of the contents of the videos.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

*Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 451 (9th Cir. 2020) (quoting 17 U.S.C. § 107(1)-(4)); *see Google*, 593 U.S. at 19 (finding that the four factors "set forth general principles, the application of which requires judicial balancing, depending upon relevant circumstances."). Fair use is a "flexible" concept and "its application may well vary depending on context." *Google*, 593 U.S. at 20.

Additionally, "when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion for dismiss.[5]" *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1064 (C.D. Cal. 2017).

### 1. The Purpose and Character of the Use

#### a. Transformative Nature

Defendant moves for judgment on the pleadings, in part, because of the transformative nature of her use. (MJOP at 7). "The first statutory factor examines 'the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.'" *Dr. Seuss*, 983 F.3d at 451 (quoting 17 U.S.C. § 107(1)). "This factor has taken on a heightened significance because it influences the lens through which we consider two other fair use factors." *Id.*

"The central inquiry under the first factor is whether the new work is 'transformative.'" *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013); *see Dr. Seuss*, 983 F.3d at 452 ("The term 'transformative' does not appear in § 107, yet it permeates copyright analysis."). Transformative works "'add [] something new' to an existing work, endowing the first with 'new expression, meaning, or message,' rather than 'merely supersed[ing] the objects of the original creation.'" *SOFA*,

---

[5] A motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), and the "principal difference … is the time of filing." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

709 F.3d at 1278 (alterations in original) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).  The Court in *Campbell* held that the "central purpose of this investigation is to see . . . whether the new work merely 'supersede[s] the object' of the original creation or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'"  *Campbell,* 510 U.S. at 579 (quoting *Folsom v. Marsh*, 9 F. Cas. 342, 348 (C.C.D. Mass. 1841)).  In contrast, "commentary [that] has no critical bearing on the substance or style of the original composition, which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh, the claim to fairness in borrowing from another's work diminishes accordingly."  *Campbell,* 510 U.S. at 580.

The Court deems Defendant's use as transformative.  Throughout the live stream, Defendant provides commentary pertaining to criticism of The Nuke.  Defendant contends that The Nuke resembles a "high school video project" or "middle school project."  (Live Stream Video, Ex. K at 1:21:14-40, 5:04:58-5:05:23).  During the subject live stream, Defendant complains about the documentary's editing (*id*., Ex. K at 2:41:05-07, 4:43:56-4:54:08) and that the video treats the audience as "morons" and is attempting to "trick" them (*id*., Ex. K at 3:46:23-37).  The Complaint further states that "she frequently makes comments that are later contradicted by The Nuke itself."  (Compl. ¶ 70.i).  Notably, "the fair use inquiry does not ask whether the criticism or parody of the copyrighted work is just or *accurate*, or mean-spirited . . . but simply whether the use is of the kind that copyright is designed to protect."  *See Weinberg v. Dirty World, LLC*, No. 16-9179, 2017 WL 5665023, at *8 (C.D. Cal. July 27, 2017) (emphasis added) (finding fair use where copyrighted image of a model was posted on a website with comments underneath including "every time I saw her, I thought she is super ugly and awkward

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

looking" and wondering how the model could get "married to that rich guy and [be] a model.").

Defendant offers other criticism of the subject documentary during her live stream. (*See generally* Compl.).  Following one of the documentary creator's criticism of Piker's apologia of China's genocide of the Uyghurs, Defendant comments,  (1) on the treatment of Uyghurs; (2) "so much of American media is focused on pointing out how evil Chine is,"; (3) stating that disabled Americans lose disability benefits when they get married; (4) incarceration levels in the United States. (Live Stream Video, Ex. K at 1:25:43-1:36:05).  Additionally, during the live stream, Defendant (1) challenges Klein's perception of Piker's sentiments regarding the interaction between imports and the fleeing of Jewish people from Israel (Live Stream Video, Ex. K at 2:36:47-2:37:04); (2) disputes Klein's account of the events of the occurrence of sexual violence of hostages (Compl. ¶ 70.i.v; Live Stream Video, Ex. K at 3:33:49-3:35:34, 3:42:49-3:45:33); (3) critiques Klein's discussion of Twitch's enforcement and moderation decisions (Compl. ¶¶ 70.l.xv-xvii, 70.i.vi); and (4) discusses her perspectives on Zionism and Judaism (Live Stream Video, Ex. K at 4:33:48-4:34:02).[6]

The Court finds Defendant's criticism and commentary within the live stream video to demonstrate the following "telltale signs of transformative use": (1) "further purpose or different character" in the defendant's work, i.e., "the creation of new information, new aesthetic, new insights and understanding" and (2) "the use of quoted matter as 'raw material,' instead of repackaging it and 'merely supersed[ing] the objects of the original creation.'"  (*Dr. Seuss*, 983 F.3d at 453) (quoting *Seltzer v. Green Day*,

---

[6] Defendant provides additional timestamps for Defendant's "notable instances of pauses for commentary, reaction and analysis."  S*ee, e.g.*, Live Stream Video, Ex. K at 1:48:00 to 1:50:30; 1:52:00 to 1:57:31; 2:23:00 to 2:29:00; 2:49:53 to 2:51:00; 3:13:00 to 3:15:24; 3:29:00 to 3:33:48; 4:29:58 to 4:34:05.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Inc., 725 F.3d 1170, 1176 (9th Cir. 2013)).  The undisputed purpose of Defendant's livestream is to contest, criticize and mock Plaintiff's message, which the courts have found weighs in favor of fair use due to its transformative nature.  *See Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 45 (S.D.N.Y. 2017) (finding that the first factor weighed in defendant's favor as the defendant's reaction video was "quintessential criticism and comment."); *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1104 (C.D. Cal. 2015) (finding transformative use where host reacted to and commented on original videos).

The facts here closely align with those in *Stebbins v. Alphabet Inc.*, No. 22-CV-00546-JSW, 2025 WL 2233208 (N.D. Cal. July 2, 2025).  *In Stebbins,* the court found the subject livestreams to be "highly transformative works" because the livestreams involved the viewing of the subject video "for seconds at a time before pausing to respond and critique" the subject video.  2025 WL 2233208, at *4.  The subject video, created by the plaintiff, provided the plaintiff's analysis and opinions regarding a video game.  *Id*.  The livestreams, however, provided commentary on the subject video as well as several additional hours regarding other videos produced by the plaintiff and his comments thereon.  *Id*.  The relevant livestream in *Stebbins* "paus[ed] . . . and comment[ed] on Plaintiff's Retrospective with the purpose of reviewing or mocking the video."  *Id*. at 5.  "This criticism is at the heart of the fair use doctrine, and it would lose meaning without reproduction of Plaintiff's video."  *Id*.; *see Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 532 (2023) (noting "commentary or criticism that targets an original work may have compelling reason to 'conjure up' the original by borrowing from it.").  As in *Stebbins*, Defendant's livestream provided commentary on The Nuke and sharp criticism of the claims made within the documentary.  Throughout the livestream, Defendant often paused The Nuke to offer spontaneous reactions, engaged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

with her audience through a live chat and provided real-time commentary interspersed with tangential discussions.  (*See, e.g.*, Live Stream Video, Ex. K at 1:48:00 to 1:50:30; 1:52:00 to 1:57:31; 2:23:00 to 2:29:00; 2:49:53 to 2:51:00; 3:13:00 to 3:15:24; 3:29:00 to 3:33:48; 4:29:58 to 4:34:05).

Further, the courts have recognized that the differences in viewing experiences and uses weigh in favor of a finding of fair use.  *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs*., Inc., 907 F. Supp. 1361, 1379 (N.D. Cal. 1995) ("Because [defendant's] use of copyrighted materials served a completely different function than that of the plaintiffs, this [first] factor weighs in [defendant's] favor.").  The difference in viewing experiences here is undisputed.  Indeed, Plaintiff states, "[w]here The Nuke seeks to expose how Piker radicalizes people online to be antisemitic and anti-Israeli, Denims attempts to use The Nuke for the exact opposite purpose: to radicalize her audience to be antisemitic and anti-Israeli, along with defending Hasan."  (Compl. ¶ 70.o).

In opposition, Plaintiff presents unsuccessful arguments.  (*See generally* Opp'n). First, Plaintiff cites *De Fontbrune v. Wofsy*, 39 F.4th 1214, 1225 (9th Cir. 2022), for the proposition that the purposes of Plaintiff's video and Defendant's livestream "overlap" to undermine Defendant's transformative argument.  (*Id*. at 8). Here, Plaintiff has conceded that the purposes of both videos do *not* overlap by stating, "[w]here The Nuke seeks to expose how Hasan radicalizes people online to be antisemitic and anti-Israeli, Denims attempts to use The Nuke for the exact opposite purpose: to radicalize her audience to be antisemitic and anti-Israeli, along with defending Hasan." (Compl. ¶ 70.o).  Additionally, the two subject videos are disparate from the subject works in *De Fontbrune,* which did overlap in nature.  In *De Fontbrune,* "The Picasso Project" and the subject photographs both presented the works of Picasso with the shared purpose of documenting Picasso's works.  39 F.4th at 1225.  As

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

previously established, the subject videos in this matter do not share such an overlapping purpose.

Second, Plaintiff cites to *Monge v. Maya Mag*., Inc., 688 F.3d 1164, 1174 (9th Cir. 2012), for the proposition that Defendant engaged in "wholesale copying sprinkled with [spoken] commentary," which the court in *Monge* found "at best minimally transformative." *Id*. at 1176. Defendant's livestream went beyond merely reproducing or supplanting The Nuke, however. Rather, as set forth above, the livestream incorporated real-time commentary, criticism and analysis that altered the purpose and character of the original work. Accordingly, unlike the defendant in *Monge*, Defendant did not simply repackage or republish the underlying work with incidental commentary but instead used the work in furtherance of a distinct expressive purpose.

During oral argument, Plaintiff argues that due to Defendant's "hate-watching"[7] of The Nuke, "the entire purpose of Denim's watch party was to hate-watch TEI's work without giving any benefit to TEI." Plaintiff provided this argument to diminish Defendant's claim of transformative use. As in *Stebbins*, Defendant's livestream provided commentary on The Nuke and sharp criticism of the claims made within the documentary. Although the Court finds some merit in Plaintiff's position regarding hate-watching, it is insufficient to negate the transformative nature of Defendant's work. Defendant often paused The Nuke to offer spontaneous reactions, engaged with her audience through a live chat and provided real-time commentary interspersed with tangential discussions. Defendant did not simply repackage or republish the underlying work with incidental commentary but instead used the work in furtherance of a distinct expressive purpose.

---

[7] "Hate-watching" can be understood as the intentional consumption of expressive media, not for enjoyment, but for the purpose of criticism as the viewer remains engaged despite finding the content objectionable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Further, Plaintiff presented a "piecemeal" argument during oral argument and asserted that Defendant, through her reaction video, could potentially demonstrate fair use as to pieces of her video but "not as to other pieces." Plaintiff does not present authority to support this argument. The Court also does not find authority or a bright-line rule to endorse Plaintiff's argument. Indeed, in *Stebbins*, with respect to the subject livestreams, the defendants viewed the subject video "for seconds at a time before pausing to respond and critique" the subject video. 2025 WL 2233208, at *4. The court in *Stebbins* did not hold that certain pauses or portions of the video, accompanied by Defendants' criticism, constituted fair use while others did not. *Id*. Instead, the court found the subject livestreams to be "highly transformative works."

For the foregoing reasons, the Court finds Defendant's use to be transformative.

### b.  Commercial Use

"The second part of the first fair use factor involves whether the new use is commercial—*i.e.*, 'whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.'" *DraftExpress, Inc. v. Whistle Sports, Inc.*, 2022 WL 16962285, at *3 (C.D. Cal. Aug. 2, 2022) (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). Critically, "the more transformative the new work, the less will be the significance of the other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579. The commercial use factor concerns "the degree to which the new user exploits the copyright for commercial gain—as opposed to incidental use as part of a commercial enterprise." *Seltzer,* 725 F.3d at 1178. The court in *DraftExpress* found that even if the relevant video "were considered at least partially commercial, its transformative nature offsets the significance of any commercialism." 2022 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

16962285, at *3; *see Google*, 593 U.S. at 32 ("many common fair uses are indisputably commercial.").

Here, Defendant contends that her use was not sufficiently commercial to outweigh the transformative. (MJOP at 12). As Defendant is a livestreamer, she is eligible to receive subscriptions, donations and advertising revenue during her Twitch broadcasts, regardless of the content nature of her use, so there is no doubt that there was a commercial use of the subject work. But the Court finds distinguishable Defendant's use from the intentional exploitation of copyrighted works for monetary gain that preclude a finding of fair use. *See generally Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 779 (9th Cir. 2006) (quoting *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001)) ("A commercial use 'is demonstrated by a showing that repeated and exploitative unauthorized copies of copyrighted works were made to save the expense of purchasing authorized copies.'"); *DraftExpress*, 2022 WL 16962285, at *3 (quoting *Seltzer*, 725 F.3d at 1178) ("Although Whistle's social media presence may serve to promote its business and indirectly boost revenue, the commercial use factor concerns 'the degree to which the new user exploits the copyright for commercial gain— as opposed to incidental use as part of a commercial enterprise.'"). Defendant's transformation of the original work heavily outweighs the commercial nature of its use. S*ee SOFA*, 709 F.3d at 1278-79 ("[B]ecause [defendant]'s use of the clip is transformative, the fact that *Jersey Boys* is a commercial production is of little significance."); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003) (finding that a work's "commercial qualities become less important" where use is highly transformative).

Accordingly, under the analysis of the first factor, the Court finds that Defendant's use weighs in favor of fair use.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*2. Nature of the Copyrighted Work*

Defendant avers that the documentary and informational nature of The Nuke favors fair use.  (MJOP at 14).  The second statutory factor considers the "the nature of the copyrighted work." 17 U.S.C. § 107(2).  This factor "recognizes that creative works are 'closer to the core of intended copyright protection' than informational and functional works, 'with the consequence that fair use is more difficult to establish when the former works are copied.'" *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997) (quoting *Campbell*, 510 U.S. at 586).  The Ninth Circuit held that this factor addresses "two aspects of the work: the extent to which it is creative and whether it is unpublished." *Monge*, 688 F.3d at 1177.  The Ninth Circuit has held that a product is creative where it is "the product of many technical and artistic decisions." *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1161 (9th Cir. 2022).  With respect to publication, while a work's unpublished state would weigh against fair use, "the converse is not necessarily true." *Dr. Seuss*, 983 F.3d at 456.  The Ninth Circuit recognized, however, that this second factor "has not been terribly significant in the overall fair use balancing." *Penguin Books,* 109 F.3d at 1402.

Here, The Nuke is a creative work with significant informational contents.  As explained by Plaintiff, The Nuke is a "tragi-comic documentary critiquing Hasan and Twitch." (Compl. ¶ 40).  It contains original footage, highly edited montages, parodic skits and archival materials. (*Id.*).  The Nuke is divided into seven sections. (*Id.*).  The first section "walks the audience through Ethan's thesis of The Nuke: that Hasan radicalizes his audience with genocidal and antisemitic terrorist propaganda," the second section involves a parody mocking how Twitch "has embraced Hasan's extremist rhetoric" and the third section focuses on how Piker allegedly radicalizes his audience by glorifying and disseminating Houthi propaganda. (*Id.*).  Additionally, the fourth section

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

focuses on Piker's interactions with Hezbollah propaganda, the fifth section focuses on Piker's interactions with Hamas propaganda and the sixth section explores Twitch's alleged role in enabling Piker to violate Twitch's Community Guidelines. (*Id*.). In the final section, Klein summarizes the two motivations for making The Nuke, which are to "stop Hasan's infiltration of mainstream media" and "to hold Twitch accountable for enabling antisemitic and anti-Israel animus on its platform." (*Id*.).

Accordingly, the Court finds that the nature of the subject work weighs against a finding of fair use. As set forth above, however, this factor alone is not "terribly significant in the overall fair use balancing." *Penguin Books,* 109 F.3d at 1402.

> 3. *The Amount and Substantiality of The Portion in Relation to the Copyrighted Work as a Whole*

The third statutory factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" favors fair use. 17 U.S.C. § 107(3). The third factor looks to the "quantitative amount and qualitative value of the original work used in relation to the justification for that use." *Seltzer*, 725 F.3d at 1178; *see Hosseinzadeh*, 276 F. Supp. 3d at 46 (noting the third factor considers the proportion of the copyrighted work used "and then how well tailored that use was to the allegedly infringing work's proper purpose—no matter how large or long the allegedly infringing work is."). "The law is clear, however, that quantity alone is not determinative." *Hosseinzadeh*, 276 F. Supp. 3d at 46. This factor "circles back to the first factor because 'the extent of permissible copying varies with the purpose and character of the use.'" *Dr. Seuss Enters*, 983 F.3d at 456 (*Campbell*, 510 U.S. at 586-87).

The courts have found that copying another work in its entirety is not dispositive as to infringement if necessary for the intended transformative use. *See Hosseinzadeh*, 276 F. Supp. at 46 ("[A] great deal of Plaintiff's work was copied, but such copying was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

plainly necessary to the commentary and critique."); *Stebbins*, 2025 WL 2233208, at *6 ("Even if the Court were to credit Plaintiff's claim that Creetosis copied the entirety of the Retrospective, that would not be dispositive. Creetosis used the Retrospective clips in order to further the Livestream's "transformative purpose of critical commentary.""); *Seltzer*, 725 F.3d at 1178-79 (finding the entire work necessary for the alleged infringer's intended use and "[g]iven that fact, this court has acknowledged that this factor will not weigh against an alleged infringer, even when he copies the whole work, if he takes no more than is necessary for his intended use."). In *Seltzer*, the Ninth Circuit found the copying of the entirety of the original work "d[id] not weigh against Green Day." *Seltzer*, 725 F.3d at 1179.

Here, Defendant showed the "entirety (or nearly the[] entirety)" of The Nuke. (Compl. ¶ 2). "It is evident that to comment on and critique a work, clips of the original may be used." *Hosseinzadeh*, 276 F. Supp. at 46; *see Campbell*, 510 U.S. at 588, 114 S.Ct. 1164 ("[P]arody must be able to 'conjure up' at least enough of that original to make the object of its critical wit recognizable . . . [c]opying does not become excessive in relation to parodic purpose merely because the portion taken was the original's heart.""). The court in *Hosseinzadeh* recognized that "[w]ithout using actual clips, the commentary and critique here would lose context and utility." 276 F. Supp. at 46. Here, the "extent" and "quality and importance" of the video clips used by Defendant was reasonable to accomplish the transformative purpose of critical commentary. *Id*.

Accordingly, the Court finds this factor does not weigh against Defendant.

### 4. *Effect of the Use on the Potential Market*

The fourth factor asks what effect the allegedly infringing use has on the "potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor considers "the extent of market harm caused by the particular actions of the alleged infringer but

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590. Where the allegedly infringing use does not substitute for the original and serves a "different market function[]," such factor weighs in favor of fair use. *Id*. at 591. In *Campbell*, the Court found that when a use is transformative, market substitution "is at least less certain, and market harm may not be so readily inferred." *Id*. "Indeed, as to parody pure and simple, it is more likely that the new work will not affect the market for the original in a way cognizable under this factor, that is, by acting as a substitute for it." *Id*. Thus, where the original work and the new work serve "different market functions," such that there is no market substitution, the new work is more likely to be fair use. *Id*.

Defendant's livestream is not a market substitute for The Nuke because someone watching the former will have a "very different experience" from watching the latter. *Hosseinzadeh* v. Klein, 276 F. Supp. at 47. Anyone seeking to watch The Nuke, a scripted and edited documentary, would have a distinctly different experience watching Defendant's fragmented start-and-stop livestream, which featured spontaneous reaction, live chat interaction, sharp criticism throughout and extrinsic source material. *See, e.g., Stebbins*, 2025 WL 2233208, at *7 (finding a lack of a market substitution because "[a]nyone seeking to watch the Livestreams would have a fundamentally different viewing experience than a person seeking to watch the Retrospective."); *Hosseinzadeh*, 276 F. Supp. 3d at 47 ("[A]nyone seeking to enjoy [the original] on its own will have a very different experience watching the [reaction] video . . ."); *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651-52 (9th Cir. 2020) ("[A] person wishing to purchase the sheet music for 'Magic' in order to play or perform that song would necessarily purchase the sheet music for the song itself from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

the owner of the performance rights—not the sheet music for 'Rainmaker.'"); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 821-22 (9th Cir. 2003) (finding no market harm where a person could not use the allegedly infringing work, a thumbnail photograph, as a substitute for the copyrighted high-resolution photograph). Indeed, Plaintiff's own allegations suggest as much: "Denims attempts to use The Nuke for the exact opposite purpose: to radicalize her audience to be antisemitic and anti-Israeli, along with defending Hasan." (Compl. ¶ 70.o).

The decision in *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 394 (S.D.N.Y. 2020) is highly instructive. There, the court held,

> Here, there is no danger that *SJW Levels of Awareness* will usurp the market of progressive commentaries such as *We Thought She Would Win*. Benjamin's target audience (generally political conservatives and libertarians) is obviously not the same as Hughes's target audience (generally political liberals). Moreover, although *SJW Levels of Awareness* is comprised entirely of portions of *We Thought She Would Win*, there is no reason to think that Hughes's audience will abandon her progressive YouTube channel to watch the derisively-titled *SJW Levels of Awareness* on a conservative YouTube channel simply because it contains parts of her work.

*Hughes,* 437 F. Supp. at 394. Accordingly, the Court finds that Defendant's livestream is not a market substitute for The Nuke.

Because three of the four fair use factors strongly favor Defendant, including the most important factor (purpose and character of use), the Court concludes that the fair use defense applies as a matter of law. Thus, Defendant's Motion for Judgment on the Pleadings is **GRANTED**.

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings.  The Court **ORDERS** Defendant to prepare and submit a proposed Judgment in this matter within seven (7) days of this Order.

**IT IS SO ORDERED.**