No. 26-3513

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE DOE DEFENDANTS,

*Petitioners and Defendants-Movants*,

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

*Respondent*,

TED ENTERTAINMENT, INC.,

*Real Party in Interest and Plaintiff-Respondent*.

On Petition for Writ of Mandamus to the United States District Court for the Northern District of California
Case No. 3:25-mc-80296-SK
Hon. Sallie Kim

## ANSWERING BRIEF TO PETITION FOR WRIT OF MANDAMUS

ROM BAR-NISSIM (SBN 293356)
ROM@HEAHBARNISSIM.COM
Heah Bar-Nissim LLP
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: 310.432.2836

**Attorneys for Real Party in Interest
Ted Entertainment, Inc.**

1

## TABLE OF CONTENTS

I. **INTRODUCTION** ..................................................1

II. **FACTUAL BACKGROUND** ...............................3

    A. **TEI and its Owners**....................................3

    B. **H3Snark** ....................................................4

    C. **The Works and their Infringement**........5

III. **RELEVANT PROCEDURAL HISTORY**........7

IV. **LEGAL STANDARD**...................................10

V. **THE PETITION FAILS TO SATISFY THE CLEAR ERROR STANDARD AS A MATTER OF LAW** ........11

VI. **THE PETITION FAILS THE CLEAR ERROR STANDARD ON THE FACTS**......................16

    A. **The Quash Order Applied the Proper Standard 16**

    B. **The Petition Fails to Refute TEI's *Prima Facie* Showing of Contributory Copyright Infringement** ..............................................17

        1. **Denims Engaged in Direct Infringement**...17

        2. **Petitioners Knew of Denims' Infringement** ........................................18

        3. **Petitioners Induced Denims' Infringement** ........................................19

    C. **Insofar as Fair Use May Be Considered, Petitioners Failed to Show that Petitioners or Denims Made a Fair Use of TEI's Works** ...........22

        1. **Petitioners Fail to Show They Made a Fair Use of the Works**............................24

**2.** **Petitioners Fail to Show that Denims Made a Fair Use of the Works ..............................26**

**3.** **The MPJOP Order is Flawed .....................39**

**D.** **Petitioners Fail to Show the Balance of Equities Weighs in Their Favor.............................................40**

**VII.** <u>**CONCLUSION**</u>**....................................................................43**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agdal v. X Corp. In Int. to Twitter*,

2025 WL 81594 (N.D. Cal. Jan, 13, 2025)......................................12

*Ambrosetti v. Oregon Cath. Press*,

151 F.4th 1211 (9th Cir. 2025) .......................................................11

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,

598 U.S. 508 (2023).................................................26, 27, 28, 29, 35

*Arista Records, LLC v. Doe 3*,

604 F.3d 110 (2d Cir. 2010) ...........................................................14

*Art of Living Foundation v. Does*,

2011 WL 3501830 (N.D. Cal. Aug. 10, 2011) ...............................12

*Art of Living Foundation v. Does*,

2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ................13, 15, 23, 41

*Atari Interactive, Inc. v. Redbubble, Inc.*,

515 F.Supp.3d 1089 (N.D. Cal. 2021).............................................18

*Barnes v. YouTube, Inc.*,

2026 WL 412470 (N.D. Cal. Feb. 13, 2026).................12, 13, 15, 41

*Bartz v. Anthropic PBC*,

787 F.Supp.3d 1007 (N.D. Cal. 2025).............................................36

*Baugher v. GoDaddy.com LLC*,

   2021 WL 4942658

   (D. Ariz. Oct. 22, 2021)...............................13, 14, 17, 23, 25, 40, 41

*Campbell v. Acuff-Rose Music, Inc.*,

   510 U.S. 569 (1994)....................................................................24

*Cognosphere Pte. Ltd. v. X Corp.*,

   2024 WL 4227594 (N.D. Cal. Sept. 18, 2024)........13, 15, 41, 42, 43

*Cox Communications, Inc. v. Sony Music Entertainment*,

   146 S.Ct. 959 (2026)...........................................................18, 19, 20

*De Fontbrune v. Wofsy*,

   39 F.4th 1214 (9th Cir. 2022) ..................................................24, 27

*Elvis Presley Enterprises, Inc. v. Passport Video*,

   349 F.3d 622 (9th Cir. 2003) ...............................................28, 29, 30

*Harper & Row Publishers, Inc. v. Nation Enterprises,*

   471 U.S. 539 (1985)...............................................................24, 35

*Highfields Capital Management, L.P. v. Doe*,

   385 F.Supp.2d 969 (N.D. Cal. 2005)..............................................16

*Hosseinzadeh v. Klein*,

   246 F.Supp.3d 34 (S.D.N.Y. 2017) .............................................3, 29

*In re Bundy*,

840 F.3d 1034 (9th Cir. 2016) ......................................................... 11

*In re Creech*,

119 F.4th 1114 (9th Cir. 2024) ................................................... 10, 11

*In re DMCA Subpoena to Reddit, Inc.*

441 F.Supp.3d 875 (N.D. Cal. 2020) ........... 12, 13, 14, 23, 25, 26, 41

*In re DMCA Subpoena to Reddit, Inc.*

2026 WL 1847873 (N.D. Cal. June 26, 2026) ......... 13, 14, 23, 25, 41

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*

608 F.Supp.3d 868 (N.D. Cal. 2022) ....................... 12, 13, 14, 16, 41

*In re O'Brien*,

312 F.3d 1135 (9th Cir. 2002) ......................................................... 17

*In re Orr*,

178 F.4th 525 (9th Cir. 2026) ......................................................... 10

*In re Swift Transportation Co. Inc.*,

830 F.3d 913 (9th Cir. 2016) ........................................................... 11

*Lenz v. Universal Music Corp.*,

815 F.3d 1145 (9th Cir. 2016) ................................................... 14, 23

*McGucken v. Pub Ocean Ltd.*,

42 F.4th 1149 (9th Cir. 2022) ..................................... 28, 34, 35, 36

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,

    545 U.S. 913 (2005)........................................................................ 20

*National Fire Protection Association, Inc. v. UpCodes, Inc.*,

    753 F.Supp.3d 933 (C.D. Cal. 2024) ............................................... 36

*Nazemian v. NVIDIA Corp.*,

    2026 WL 1229583 (N.D. Cal. May 5, 2026).............................. 17, 18

*Penguin Random House LLC v. Colting*,

    270 F.Supp.3d 736 (S.D.N.Y. 2017) ............................................... 28

*Signature Management Team, LLC v. Automattic, Inc.*,

    941 F.Supp.2d 1145 (N.D. Cal. 2013)..................... 12, 13, 14, 15, 40

*Smythe v. Doe*,

    2015 WL 12819174 (C.D. Cal. Nov. 17, 2015) .............................. 12

*Sony Music Ent. Inc. v. Does 1-40*,

    326 F.Supp.2d 556 (S.D.N.Y. 2004) .............................................. 14

*Strike 3 Holdings, LLC v. Meta Platforms, Inc.*,

    --F.Supp.3d--, 2026 WL 1697633 (N.D. Cal. June 11, 2026).......... 18

*VHT, Inc. v. Zillow Group, Inc.*,

    918 F.3d 723 (9th Cir. 2019) .......................................................... 35

**Statutes**

17 U.S.C. §106..................................................................... 17, 18

17 U.S.C. §107..................................................................... 24, 29

17 U.S.C. §512(h) .................................................................. 12

**Other Authorities**

H.R. Rep. No. 94-1476 ........................................................ 24

5

Real Party in Interest and Plaintiff-Respondent Ted Entertainment, Inc. ("TEI") hereby submits its answering brief to the Petition for Writ of Mandamus (the "Petition") of Petitioners and Defendants-Movants Does (collectively, the "Petitioners").

## I. <u>INTRODUCTION</u>

The Petition must be denied because it fails to demonstrate clear error in the district court's April 29, 2026 Order denying Petitioners' motion to quash (the "Quash Order"). The Quash Order addressed Petitioners' First Amendment challenge to TEI's subpoenas to Reddit, Inc. and Discord, Inc. (collectively, the "Subpoenas"). The Subpoenas seek Petitioners' personal identifying information to name and serve them with a lawsuit alleging claims of contributory copyright infringement against them.

The Petition fails to show clear error for several reasons. First, there can be no clear error as a matter of law. The Ninth Circuit has never addressed a First Amendment challenge to a subpoena seeking to unmask an anonymous copyright defendant. Furthermore, district courts have applied different tests (including as to fair use) to address the issue.

Next, the Petition fails on the facts. Contrary to Petitioners'

assertions, the district court employed the correct test adopted by the majority of district courts. Moreover, the Petition fails to refute that TEI made a *prima facie* evidentiary showing of Petitioners' contributory copyright infringement of the two works at issue: (1) *The H3 Show #104 – Countdown to Doomsday* (the "*Countdown Episode*"); and (2) *Content Nuke: Hasan Piker* ("*The Nuke*") (collectively, the "Works").

Regardless, even if fair use is part of the analysis (which it is not), Petitioners cannot prove their two Reddit posts directing users to the January 31, 2025 stream of co-defendant Alexandra Marwa Saber p/k/a Denims ("Denims") constituted fair use. Nor have Petitioners proven Denims made fair use of the Works.[1]

Finally, contrary to Petitioners' assertions, the balance of equities does not weigh in their favor. Petitioners made five evidentiary submissions comprised of hundreds of pages and hours of videos. Those submissions failed to persuade the court because they

---

[1] The order in the underlying action finding Denims made a fair use of *The Nuke* is flawed and will be appealed. While addressing the order is beyond the scope of this brief, TEI shall touch upon those flaws in Section VI.C.3, *infra*. If necessary, this Court should order supplemental briefing by the parties to address the order.

were replete with falsehoods and gross misrepresentations of the underlying facts. *See* Fns. 3-4, *infra*.

Therefore, for the reasons set forth herein, TEI requests this Court to deny the Petition.

## II.    FACTUAL BACKGROUND

### A.    TEI and its Owners

TEI is a production company that produces online content. It owns the YouTube channels "h3h3Productions" (which contains scripted and highly edited commentary videos) and "H3Podcast" (which airs podcast episodes). 2-SER-263, ¶8-9.

TEI earns revenue through paid memberships and advertising revenue that is split with YouTube. The more views a YouTube video receives, the more it gains advertising revenue and traction in YouTube's algorithm, which increases the video's visibility, views and advertising revenue. 2-SER-270, ¶32; 2-SER-263, ¶8.

TEI's owners are Ethan and Hila Klein. 2-SER-283, ¶7. They pioneered fair use reaction videos, including setting precedent in *Hosseinzadeh v. Klein*, 246 F.Supp.3d 34 (S.D.N.Y. 2017). 2-SER-283-284, ¶10.

Prior to October 7, Ethan co-hosted a political comedy podcast

3

with the streamer, Hasan Piker. After October 7, friction grew between the two. While the Kleins publicly condemned Israel's actions as a genocide, they advocated a two-state solution and condemned terrorism. In contrast, Piker justified terrorism and advocated dismantling Israel. This schism led Piker's supporters to attack the Kleins as genocide supporters. 2-SER-288, ¶22.

### B. H3Snark

Snark subreddits are a genre of message boards on Reddit comprised of "fallen fans" of a particular public figure. 2-SER-287-288, ¶¶20-21. Petitioners are the moderators of H3Snark – a snark subreddit obsessed with the Kleins. Its user base grew significantly after the public schism between Piker and the Kleins and became the central location to attack the Kleins. 2-SER-288, ¶23; 2-SER-272-279, ¶¶38-39.

H3Snark also became a hub for copyright infringement of TEI's content. H3Snark users had a ravenous appetite for "hatewatching" TEI's content. Petitioners knew their users desired TEI's content but did not want to drive views and advertising revenue to TEI. 2-SER-355-363, ¶¶7-19; 2-SER-389-421.

In response, Petitioners supplied their users with pirated

4

substitutes of TEI's content – which they called "ethical viewing." Petitioners would provide links to TEI's content on the pirate website, YewTube. 2-SER-356-359, ¶¶9-14; 2-SER-389-402. YewTube provides unauthorized access to YouTube videos and publicly performs them outside of the YouTube platform, which deprives the original of views, advertising revenue and visibility. Petitioners even admitted this by stating: "We encourage folks to watch on yewtube since it doesn't play ads or contribute to [TEI's] view counts." 2-SER-358, ¶12; 2-SER-391-392; 2-SER-401-402; ER-78, ¶30.

Petitioners provided these links through: (1) community posts visible to all H3Snark users at the top of H3Snark's page; and (2) during live chats hosted on H3Snark (which Petitioners deleted after TEI's live broadcast ended). 2-SER-356-358, ¶¶9-11; 2-SER-391-395. Petitioners also provided their users instructions on how to download TEI's paywalled content and upload it to H3Snark – which resulted in entire paywalled episodes uploaded to H3Snark where viewers could watch them for free. 2-SER-355-356, ¶¶7-8; 2-SER-389-390.

## C. <u>The Works and their Infringement</u>

The Kleins decided to create a documentary on how Piker radicalizes people to support terrorism. *The Nuke* was created over

several months and utilized a combination of comedy, commentary, archival materials, audio and visual effects, montage and editing to criticize Piker. Its final duration was one hour and forty-two minutes. 2-SER-269, ¶¶24-25; 2-SER-317-320; Ex. E.[2]

The Kleins promoted *The Nuke* heavily before its release on January 31, 2025. Public interest in *The Nuke* was immense, particularly on H3Snark. 2-SER-269-270, ¶28. On January 30, 2025, Petitioners created a community post visible to all H3Snark users titled: "MEGATHREAD | Content Nuke – Where to Watch & Discussion" (the "1/30/25 Post"). It provided links to various creators (including Denims) as a place "to watch the nuke without showing support for h3" (*i.e.*, TEI). 2-SER-369, ¶35; ER-143.

On January 31, 2025, TEI broadcast the *Countdown Episode* to build interest in *The Nuke*, along with covering other topics. During the broadcast, Petitioners created another community post titled: "DENIMS is LIVE reacting now to today's H3 podcast episode and the 'content nuke' video Ethan is publishing in about an hour" (the

---

[2] TEI has filed a motion to submit various video exhibits that were concurrently filed with the complaint in the underlying action and by Petitioners in the present action. Dkt. No. 12.1. All citations reference the complaint exhibit letter.

"First 1/31/25 Post"). It contained a hyperlinked picture of Denims that took users directly to her stream (the "Watch Party") of the Countdown Episode. 2-SER-370-372, ¶¶38, 40; ER-173; 2-SER-456-457.

Shortly afterward, TEI released *The Nuke*. Petitioners created another community post titled: "Ethan Klein's Content Nuke on Hasan Piker | H3 Snark Megathread" (the "Second 1/31/25 Post"). It stated "Places to watch reactions to this video" with a link to Denims' Watch Party of *The Nuke*. 2-SER-370-371, ¶¶39-40; ER-156.

## III. RELEVANT PROCEDURAL HISTORY

On June 19, 2025, TEI initiated the underlying action titled *Ted Entertainment, Inc. v. Saber et al.* (C.D. Cal. Case No. 2:25-cv-05564-WLH-PD) (the "Underlying Action"). The complaint alleged: (1) direct infringement of the *Countdown Episode* and *The Nuke* against Denims; and (2) contributory infringement of both Works against Petitioners. ER-62-176.

Prior to the Rule 26(f) conference, TEI and Denims filed a stipulation for TEI to serve the Subpoenas, which was granted. ER-180-212; ER-214-215. The same day TEI served the Subpoenas, Petitioners' counsel contacted TEI's counsel to inform TEI that

7

Petitioners would file a motion to quash the Subpoenas (the "Motion"). ER-442-443, ¶¶57-58.

On September 22, 2025, Petitioners filed their Motion and supporting papers in the action titled: *In re Subpoenas to Reddit, Inc. and Discord, Inc.* (N.D. Cal. Case No. 3:25-mc-80296-SK). ER-17-50. Shortly thereafter, the court granted Petitioners' request to file additional declarations for *in camera* review. 2-SER-510.

On October 20, 2025, TEI filed its opposition to the Motion. ER-383-413. In the supporting papers, TEI was forced to debunk countless falsehoods and conspiracy theories in Petitioners' declaration.[3] Notable examples include: (1) the Kleins sent human skulls to themselves to elicit sympathy after being investigated by the Los Angeles County Department of Child and Family Services based on a fraudulent report; (2) the Subpoenas were a fishing expedition because Ethan wore a "fishing hat" when discussing them; and (3) Ethan intended to kill them based on quoting the film *Taken.* 2-SER-299, ¶¶73-74; 2-SER-304-306, ¶77; 2-SER-340-347.

---

[3] *See* 2-SER-269, ¶25 fn.18; 2-SER-271-316 ,¶¶35-94; 2-SER-317-352; 2-SER-354-372, ¶¶3-40; 2-SER-381, ¶56; 2-SER-386-388, ¶¶79-80; 2-SER389-457; Exs. D-F.

On November 3, 2025, Petitioners filed their reply brief and supporting papers containing new arguments and evidence that did not respond to TEI's opposition. ER-450-531. Unable to address these new arguments and evidence (which were also based on falsehoods and mischaracterizations), TEI was confined to lodging objections. 1-SER-247-253; *see also* N.D. Cal. Local Rule 7-3.

On December 9, 2025, Petitioners filed an administrative motion and supporting papers that improperly introduced additional evidence and substantive argument. 1-SER-176-246. In its opposition and supporting papers, TEI debunked Petitioners' assertions.[4] Despite the local rules not authorizing replies for administrative motions, Petitioners filed a reply brief and additional evidence. 1-SER-11-24; *see also* N.D. Cal. Local Rule 7-11.

On April 15, 2026, the Court provided the parties notice of questions to be addressed at the hearing that primarily concerned the appropriate legal standard. 1-SER-9-10. Immediately after the Motion was heard on April 20, 2026, the Court ordered TEI to file a corrected video exhibit of Denims' Watch Party and TEI complied. 1-SER-6-8.

---

[4] 1-SER-27-153, ¶¶4-10; 1-SER-159-168, ¶¶17-19

9

On April 29, 2026, the Court issued the Quash Order denying the Motion. ER-5-16.

On May 29, 2026, Petitioners initiated two matters in this Court. The first is the present petition. The second is an appeal titled *Ted Entertainment, Inc. v. Doe Defendants* (Case No. 26-3553).

Concurrently, Denims filed a motion for judgment on the pleadings as to *The Nuke* (but not the *Countdown Episode*) based on fair use. ER-532-560. The court in the Underlying Action granted the motion (the "MPJOP Order"), which Petitioners filed with this Court. Dkt. No. 10.1

## IV.   <u>LEGAL STANDARD</u>

A "writ of mandamus is a drastic and extraordinary remedy reserved for really extraordinary causes." *In re Creech*, 119 F.4th 1114, 1119 (9th Cir. 2024). This Court weighs five factors to determine whether to grant the Petition. *Id.* at 1120. The most important factor is "whether the district court's order is clearly erroneous as a matter of law" – which "is a necessary condition for granting a writ of mandamus." *In re Orr*, 178 F.4th 525, 532 (9th Cir. 2026).

The clear error "standard is demanding." *In re Creech*, 119

10

F.4th at 1120. The Petition cannot be granted "simply because a district court commits an error, even one that would ultimately require reversal on appeal." *Id.* at 1121. Rather, "the standard requires [a] firm conviction that the district court misinterpreted the law or committed a clear abuse of discretion." *Id.* (cleaned up).

The standard is "especially deferential" when appellate review involves the "abuse of discretion" standard. *In re Bundy*, 840 F.3d 1034, 1041 (9th Cir. 2016). "[R]ulings concerning discovery" – like the Quash Order – are subject to the "abuse of discretion standard." *Ambrosetti v. Oregon Cath. Press,* 151 F.4th 1211, 1218 (9th Cir. 2025).

## V.  THE PETITION FAILS TO SATISFY THE CLEAR ERROR STANDARD AS A MATTER OF LAW

The "absence of controlling precedent weighs strongly against a finding of clear error." *In re Swift Transportation Co. Inc.*, 830 F.3d 913, 916-17 (9th Cir. 2016). If "no prior Ninth Circuit authority prohibited the course taken by the district court, its ruling is not clearly erroneous." *Id.* at 917. Here, the Ninth Circuit has never articulated the standard for determining a First Amendment challenge to a subpoena seeking to unmask an anonymous copyright

11

infringement defendant.

Further, courts have noted the lack of uniform case law when "the anonymous speech at issue constitutes copyright infringement or relates to illegal activity[.]" *Agdal v. X Corp. In Int. to Twitter*, 2025 WL 81594, *4 (N.D. Cal. Jan, 13, 2025). "[S]ome courts have concluded that a First Amendment analysis can be dispensed with altogether while others have concluded that consideration of the First Amendment concerns is still appropriate." *Id.* (citing *In re DMCA § 512(h) Subpoena to Twitter, Inc.* ("*Twitter*"), 608 F.Supp.3d 868, 876 (N.D. Cal. 2022); *Art of Living Foundation v. Does*, 2011 WL 3501830, *3 (N.D. Cal. Aug. 10, 2011); *In re DMCA Subpoena to Reddit, Inc.* ("*Reddit 2020*"), 441 F.Supp.3d 875, 882 (N.D. Cal. 2020); *Smythe v. Doe*, 2015 WL 12819174, *1 (C.D. Cal. Nov. 17, 2015)).

Nearly all cases addressing a First Amendment challenge to a subpoena seeking to unmask an anonymous copyright infringement defendant were decided in the context of a motion to quash a subpoena issued under 17 U.S.C. §512(h) ("DMCA Subpoena").[5] The

---

[5] *Twitter*, 608 F.Supp.3d at 875; *Barnes v. YouTube, Inc.*, 2026 WL 412470, *2 (N.D. Cal. Feb. 13, 2026); *Signature Management Team,*

12

only exception is *Art of Living Foundation v. Does*, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011).

The majority of cases employ the following test: (1) "the party seeking the disclosure must demonstrate a *prima facie* case on the merits of its underlying … copyright claim;" and (2) "the Court balances the need for the discovery against the First Amendment interest at stake." *Cognosphere*, 2024 WL 4227594, *3; *Baugher*, 2021 WL 4942658, *3; *Twitter*, 608 F.Supp.3d at 876; *Barnes*, 2026 WL 412470, *3; *Art of Living*, 2011 WL 5444622, *7; *Signature*, 941 F.Supp.2d at 1157; *Reddit 2026*, 2026 WL 1847873, *4.

In *Reddit 2020*, the court only required a *prima facie* showing. 441 F.Supp.3d at 882. It rejected the balance of equities inquiry because "it is not well suited for a copyright dispute" since "the First Amendment does not protect anonymous speech that infringes copyright." *Id.*

In *Signature*, the court employed a test from the Southern

---

*LLC v. Automattic, Inc.*, 941 F.Supp.2d 1145, 1148 (N.D. Cal. 2013); *In re DMCA Subpoena to Reddit, Inc.* ("*Reddit 2026*"), 2026 WL 1847873, *2 (N.D. Cal. June 26, 2026); *Cognosphere Pte. Ltd. v. X Corp.*, 2024 WL 4227594, *2 (N.D. Cal. Sept. 18, 2024); *Baugher v. GoDaddy.com LLC*, 2021 WL 4942658, *1 (D. Ariz. Oct. 22, 2021); *Reddit 2020*, 441 F.Supp.3d at 877.

13

District of New York that the Second Circuit subsequently adopted. 941 F.Supp.2d at 1158 (citing *Sony Music Ent. Inc. v. Does 1-40*, 326 F.Supp.2d 556, 565-67 (S.D.N.Y. 2004)); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010). This standard examines: "(1) whether the party seeking discovery made a prima facie claim of copyright infringement; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the central need for [the] subpoenaed information; and (5) the expectation of privacy for the party opposing discovery." *Signature*, 941 F.Supp.2d at 1158.

Amongst these cases, there is no uniformity on the role of fair use. *Baugher*, *Reddit 2020* and *Reddit 2026* addressed the defendant's assertion of fair use when seeking to rebut a plaintiff's *prima facie* showing under their respective tests.[6] *Twitter* placed the burden on the plaintiff to refute fair use[7] – despite this Court's holding that it is "clear that the burden of proving fair use is always on the putative infringer." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1152-53

---

[6] *Baugher*, 2021 WL 4942658, *4; *Reddit 2020*, 441 F.Supp.3d at 882-886; *Reddit 2026*, 2026 WL 1847873, *4-10.

[7] *Twitter*, 608 F.Supp.3d at 879.

14

(9th Cir. 2016). *Cognosphere* and *Barnes* noted that the party opposing the subpoena asserted fair use but did not meaningfully argue the affirmative defense in its briefing.[8]

Most notable, *Art of Living* (the only non-DMCA Subpoena case) and *Signature* refused to conduct a fair use analysis. In *Art of Living*, the party moving to quash argued fair use to refute the *prima facie* showing. 2011 WL 5444622, *3. The court declined to address the issue because there was a pending motion for summary judgment on fair use. *Id.*, *8 fn.6. The court did note that "the circumstances here create a substantial question as to whether the doctrine applies." *Id.*, *6.

In *Signature*, the court applied the tests articulated in both *Art of Living* and *Sony*. 941 F.Supp.2d at 1157-58. The Court noted that the parties disputed "whether a fair use defense would be viable." *Id.* at 1156 fn.8. As in *Art of Living*, the Court in *Signature* did not address fair use when it applied the *Art of Living* test. *Signature*, 941 F.Supp.2d at 1157. In applying the *Sony* test, the Court stated that fair use should be addressed in the underlying copyright action. *Signature*,

---

[8] *Cognosphere*, 2024 WL 4227594, *6; *Barnes*, 2026 WL 412470, *4 fn.3.

15

941 F.Supp.2d at 1158.

Therefore, the Petition must be denied because it fails to demonstrate clear error as a matter of law.

## VI.   THE PETITION FAILS THE CLEAR ERROR STANDARD ON THE FACTS

### A.   The Quash Order Applied the Proper Standard

The Quash Order stated the applicable legal standard: (1) "require[d] the party seeking disclosure to make a prima facie showing on the merits of their claim;" and (2) "balance the equities, weighing the potential harm to the party seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim." ER-009 (quoting *Twitter*, 608 F.Supp.3d at 876).

This standard is identical to the majority of cases addressing subpoenas seeking to unmask anonymous copyright defendants. *See* Section V, *supra*. Therefore, Petitioners' assertion that the Quash Order failed to employ the proper standard is false.[9]

---

[9] Notably, the language quoted from *Twitter* in the Quash Order expressly cites *Highfields Capital Management, L.P. v. Doe*, 385 F.Supp.2d 969, 974-75 (N.D. Cal. 2005). *Twitter*, 608 F.Supp.3d at 876.

**B.** **The Petition Fails to Refute TEI's *Prima Facie* Showing of Contributory Copyright Infringement**

Petitioners omit material evidence from the record that is necessary to determine TEI's *prima facie* showing (and even Petitioners' assertion of fair use). Specifically, Petitioners omit: (1) the two Works at issue; (2) Denims' Watch Party; (3) the exhibits to the declaration of TEI's counsel; and (4) the Kleins' joint declaration and exhibits. The "failure to present a sufficient record can itself serve as a basis for summary affirmance." *In re O'Brien*, 312 F.3d 1135, 1137 (9th Cir. 2002).

Regardless, TEI made its *prima facie* showing by "produc[ing] competent evidence supporting a finding of each fact that is essential to [the] cause of action." *Baugher*, 2021 WL 4942658, *3. The elements of contributory infringement are that the defendant: "(1) had knowledge of a third party's infringement; and (2) induced that infringement[.]" *Nazemian v. NVIDIA Corp.*, 2026 WL 1229583, *5 (N.D. Cal. May 5, 2026).

**1.** **Denims Engaged in Direct Infringement**

The elements of direct copyright infringement are: (1) ownership of a valid copyright and (2) violation of one of the exclusive rights in 17 U.S.C. §106. *Baugher*, 2021 WL 4942658, *3.

17

"Copyright registration establishes a prima facie case of ownership." *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F.Supp.3d 1089, 1111 (N.D. Cal. 2021). TEI registered the Works[10] and never authorized Denims' use of the Works. 2-SER-270, ¶31; 2-SER-372, ¶41; Exs. J-K. Consequently, she violated TEI's right to reproduce and publicly perform the Works. 17 U.S.C. §106(1)(4).

### 2.    Petitioners Knew of Denims' Infringement

While mere knowledge is no longer sufficient to establish contributory infringement, *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S.Ct. 959, 968 (2026), knowledge is nevertheless relevant in establishing intent, which *can* support a claim of contributory infringement. *See Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, --F.Supp.3d--, 2026 WL 1697633, *8-9 (N.D. Cal. June 11, 2026); *Nazemian*, 2026 WL 1229583, *5-6. Here, there is ample evidence of knowledge.

Petitioners knew that Denims was streaming both Works. The title for the First 1/31/25 Post was "DENIMS is LIVE reacting now to today's H3 podcast episode and the 'content nuke' video Ethan is

---

[10] 2-SER-269, ¶26; 2-SER-271, ¶34; 2-SER-369-370, ¶¶34, 37.

publishing in about an hour." It contained a hyperlinked photograph of Denims that took users directly to her Watch Party. ER-173. Therefore, Petitioners knew Denims was currently exploiting the *Countdown Episode* and would exploit *The Nuke* when they made the First 1/31/25 Post.

The Second 1/31/25 Post was titled "Ethan Klein's Content Nuke on Hasan Piker | H3 Snark Megathread" with the text "Places to watch reactions to th*is* video." In the list of creators reacting to *The Nuke*, the post stated: "**Denims (Twitch) | Link** *(LIVE NOW)*". ER-156 (original emphasis). Therefore, Petitioners knew that Denims was streaming *The Nuke* when they made the Second 1/31/25 Post.[11]

### 3. Petitioners Induced Denims' Infringement

The Supreme Court held that a defendant is "contributorily liable for [a] user's infringement only if it intended that the provided service be used for infringement." *Cox Communications, Inc. v. Sony Music Entertainment, Inc.*, 146 S.Ct. 959, 967 (2026). Intent "can be

---

[11] While the Second 1/31/25 Post contained a link to *The Nuke*, it was in the letter "i" of the word "this" in the phrase "Places to watch reactions to th*is* video." In contrast, the word "**Link**" next to Denims' name was bold and underlined. ER-156. The reason for this difference is Petitioners wanted to make accessing Denims' Watch Party easy and provide the imprimatur of linking to the original.

shown only if the party induced the infringement[.]" *Id.* A party "induces infringement if it actively encourages infringement through specific acts." *Id.*

Petitioners intended for their First 1/31/25 Post and Second 1/31/25 Post to encourage Denims' infringing use of both Works. Through these posts, Petitioners encouraged Denims' infringement by directing H3Snark users away from the Works to Denims' Watch Party by advertising her Watch Party and providing links to it. ER-156; ER-173.

Further, Petitioners "aim[ed] to satisfy a known source of demand for copyright infringement" – *i.e.*, intent to achieve an unlawful objective. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939 (2005). The 1/30/25 Post demonstrates Petitioners' intent by stating: "Hey everyone, we've seen a lot of comments about wanting to watch the nuke without showing support for H3" – *i.e.*, acknowledging their users wanted to consume unauthorized versions of *The Nuke*. ER-143.

Petitioners' intent is further evidenced by the timing of the posts. The First 1/31/25 Post was posted at 12:33 p.m. PST – *i.e.*, a few minutes after the *Countdown Episode* began. ER-173; ER-242,

20

¶33; 2-SER-370, ¶36. The Second 1/31/25 Post was posted at 1:43 p.m. PST – *i.e.*, 13 minutes after *The Nuke* was publicly released. ER-156; ER-243-244, ¶38; 2-SER-270, ¶30. By offering alternatives for the Works almost contemporaneously with their original broadcast, Petitioners helped Denims siphon views away from the Works to herself. Petitioners achieved this objective by directing their users – who were the most eager viewers of the Works – away from the originals to Denims' Watch Party as a substitute.

Petitioners' intent is further evidenced by their history of providing H3Snark users pirated versions of TEI's content. Petitioners provided their users links to YewTube – a website that publicly performs YouTube videos outside the YouTube platform and deprives the original of views, advertising revenue and visibility. As Petitioners stated, they "encourage[d] folks to watch on yewtube since it doesn't play ads or contribute to [TEI's] view counts." 2-SER-356-358, ¶¶9-12; 2-SER-391-402; ER-78, ¶30.

The Quash Order expressly recognized Petitioners' intent to encourage Denims' infringement.

> TEI does not merely allege these facts but points to specific evidence that [Petitioners] specifically instructed other potential viewers to watch Denims' 'watch party' as an 'ethical' way to watch TEI's programs. [Citing

21

Petitioners' posts] In this context, opponents of the Kleins wanted to watch their shows but did not want to give them 'views' on YouTube or other streaming platforms that reward content creators based on their number of viewers. It appears that the entire purpose of watching Denims' watch party was to watch TEI's programming in a manner that did not benefit TEI. (*See id. providing a list of content creators for people to watch* The Nuke "without showing support for H3").

TEI's allegations, supported by evidence, create a prima facie claim for contributory copyright infringement against [Petitioners]. Although it may seem counterintuitive that opponents of the Kleins would want to watch the Kleins' programs, they were engaging in a cultural phenomenon known as "hate watching."

….

Here, the entire purpose of Denims' watch party was to "hatewatch" TEI's works without giving any benefit to TEI. There is credible evidence that [Petitioners] understood this goal and facilitated this goal by encouraging other people to watch Denims' watch party.

ER-13-14.

Therefore, Petitioners fail to refute TEI's *prima facie* showing of contributory copyright infringement.

### C. <u>Insofar as Fair Use May Be Considered, Petitioners Failed to Show that Petitioners or Denims Made a Fair Use of TEI's Works</u>

The Quash Order correctly held that – in the context of a Rule 45 subpoena (as opposed to a DMCA Subpoena) – the fair use

analysis should be reserved for the underlying action. ER-11:19-12:22. As the Quash Order correctly noted, DMCA Subpoena actions are distinct because: (1) they are standalone civil cases; and (2) a DMCA Subpoena requires a DMCA takedown, which necessitates analyzing fair use before issuance. ER-11:19-12:22. The Quash Order is in accord with the only non-DMCA Subpoena case, which reserved the fair use analysis to the underlying action. *Art of Living*, 2011 WL 5444622, *3 & 8 fn.6.[12]

Even if fair use is analyzed in the non-DMCA Subpoena context, Petitioners failed to make this showing. As previously stated, the Ninth Circuit makes "clear that the burden for proving fair use is always on the putative infringer." *Lenz*, 815 F.3d at 1152-53. This also applies to motions to quash subpoenas seeking to identify anonymous copyright infringers. *See Baugher*, 2021 WL 4942658, *4; *Reddit 2020*, 441 F.Supp.3d at 883; *Reddit 2026*, 2026 WL 1847873, *5.

The Copyright Act contains four factors courts consider to evaluate fair use:

1.  [T]he purpose and character of the use, including whether such use is of a commercial nature or is for

---

[12] Both cases also involved a pending motion on fair use.

nonprofit educational purposes;

2. [T]he nature of the copyrighted work;

3. [T]he amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4. [T]he effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. §107.

Fair use "is not to be simplified with bright-line rules" and requires a "case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). "[E]ach case raising the question must be decided on its own facts." *Harper & Row Publishers, Inc. v. Nation Enterprises* ("*Harper*"), 471 U.S. 539, 560 (1985) (quoting H.R. Rep. No. 94-1476, p. 65 (1976)).

### 1. Petitioners Fail to Show They Made a Fair Use of the Works

Petitioners claim they made a fair use by facilitating H3Snark users' commentary and criticism of the Works. The Ninth Circuit has rejected this argument: the "end-user's utilization of the product is largely irrelevant" to fair use. *De Fontbrune v. Wofsy*, 39 F.4th 1214, 1224 (9th Cir. 2022). This applies with equal force to motions to quash subpoenas seeking to unmask anonymous copyright infringers:

> Posting a work and implicitly inviting comment or criticism is the same as simply copying the work; any

24

> work made public will always inspire an opinion in the reader, but the reader's implicit opinion is not the same as comment or criticism formed and made by the blogger who copies the copyright protected work.

*Baugher*, 2021 WL 4942658, *4.

Here, Petitioners' posts did not provide any commentary on the Works. The title of the First 1/31/25 Post was: "DENIMS is LIVE reacting now to today's H3 podcast episode and the 'content nuke' video Ethan is publishing in about an hour." It did not contain any further text in the body of the post. ER-173. The title of the Second 1/31/25 Post was "Ethan Klein's Content Nuke on Hasan Piker | H3 Snark Megathread." The body's only text was: "Places to watch reactions to this video" with a list of creators, links to their pages and whether they were currently streaming *The Nuke*. ER-156.

Petitioners' posts stand in stark contrast to those in *Reddit 2026* and *Reddit 2020*. In *Reddit 2026*, the post's title was "PBA: Weaponizing SA [*i.e.*, Sexual Assault], Homophobia, and Moms for his Angry Rant" and "the body of the posts provide[d] criticisms of [the plaintiff's] language, including his references to an individual's mother, anal sex, and child abuse." *Reddit 2026*, 2026 WL 1847873, *6. The post contained a 27-second clip from a nearly 16-hour live stream to evidence the critique. *Id.* In *Reddit 2020*, the user posted a

25

one-page Jehovah's Witness advertisement from a multipage magazine. *Reddit 2020*, 441 F.Supp.3d at 878-879. The advertisement was posted on an existing post criticizing the organization's fundraising and data collection practices. *Id.* These uses do not resemble Petitioners' posts whatsoever.

Therefore, Petitioners fail to show they made a fair use of the Works.

### 2. Petitioners Fail to Show that Denims Made a Fair Use of the Works

This Court should abstain from deciding whether Denims made a fair use until the forthcoming direct appeal from the MPJOP Order. Out of an abundance of caution, TEI shall explain why Denims failed to make a fair use of the Works.

### a. The First Factor Weighs Against Fair Use

The first factor relates to the problem of "substitution" – *i.e.*, whether the secondary use "supersedes" or "supplant[s]" the original. *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith* ("*Warhol*"), 598 U.S. 508, 527 (2023). The "central question" is whether the secondary use "adds something new, with a further purpose or different character." *Id.* at 528. The mere fact that a

26

secondary use has "some further purpose" or "add[s] something new

… does not render such uses fair." *Id.* at 528-529. Rather, "whether an

allegedly infringing use has a further purpose or different character" is

"a matter of degree[.]" *Id.* at 532. Secondary uses that do "not serve

an 'entirely different function' than the originals" are not generally

considered fair use. *De Fontbrune*, 39 F.4th at 1225.

The "first factor also relates to the justification for the use" both

in the "broad" and "narrower sense." *Warhol*, 598 U.S. at 531-532. A

use is justified in the "broad sense" if it has a "distinct purpose" from

the original "without diminishing the incentive to create." *Id.* at 531. A

use is justified in the "narrower sense" when it "is reasonably

necessary to achieve the user's new purpose." *Id.* Such justification is

"particularly relevant to assessing fair use" where "wide

dissemination of a secondary work would otherwise run the risk of

substitution for the original[.]" *Id.* Again, "the question of justification

is one of degree." *Id.*

Even criticism is "not entitled to a presumption of fairness."

*Warhol*, 598 U.S. at 532 fn.7. To qualify as transformative criticism,

"each quoted passage" must serve "a different purpose (an object of

criticism)." *Id.* at 528 fn.4. Consequently, "a court must consider each

27

use within the whole to determine whether the copying is fair." *Id.* The first factor does not favor fair use when "a defendant copies more than is necessary to facilitate 'comment or criticism.'" *Penguin Random House LLC v. Colting*, 270 F.Supp.3d 736, 751 (S.D.N.Y. 2017). "The law is clear that, to be considered transformative criticism, the aspects of a work that reproduce another's protected expression must be in service of commentary on that work. It is not enough for part of a work to have a transformative purpose." *Id.* When "clips are played without much interruption, if any" or "used in excess of [the] benign purpose," such uses fail to sufficiently transform a work. *Elvis Presley Enterprises, Inc. v. Passport Video*, 349 F.3d 622, 628-29 (9th Cir. 2003).[13]

Most important, when "the commentary has no critical bearing on the substance or style of the original composition, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of commerciality, loom larger." *Warhol*, 598 U.S. at 530-31.

*Hosseinzadeh* provides useful guidance. As the court noted,

---

[13] Overruled on other grounds in *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1158 (9th Cir. 2022).

reaction videos "vary widely in terms of purpose, structure, and the extent to which they rely on potentially copyrighted material." 276 F.Supp.3d 34, 40 fn.1 (S.D.N.Y. 2017). A reaction video that "intersperses relatively short segments" of the original "with long segments of the [secondary user's] commentary" constitutes fair use. *Id.* at 40. Reaction videos that are more "akin to a group viewing session" (*i.e.*, a watch party) are not considered fair use. *Id.* at 40 fn.1. Due to this difference, the court clarified it was "not ruling here that all 'reaction videos' constitute fair use." *Id.*

The first factor also examines whether the use was commercial. 17 U.S.C. § 107(1). Commercialism examines "the degree to which the new user exploits the copyrighted work for commercial gain—as opposed to incidental use as part of a commercial enterprise." *Elvis*, 349 F.3d at 627. "The undisputed commercial character of [a defendant's] use, though not dispositive, tends to weigh against a finding of fair use." *Warhol*, 598 U.S. at 537.

*__Countdown Episode__*: Denims streamed almost the entire *Countdown Episode* concurrently with TEI's live broadcast. 2-SER-372-373, ¶¶43-44; Ex. K at 9:30-1:15:26. As Denims herself admitted: "If someone watches content on someone else's stream, there is a very

29

low likelihood that they're going to go watch it separately and give you the view or the like." 2-SER-376-379, ¶¶49-50.

Denims' Watch Party of the *Countdown Episode* was for a commercial purpose because she solicited and received paid subscriptions and donations, including advertising revenue. 2-SER-373, ¶44; Ex. K at 9:30-1:15:26. She also used her Watch Party of the *Countdown Episode* to promote her Watch Party of *The Nuke* by:

- Placing a banner on the top of her screen stating: "CONTENT NUKE DROPS AT 1:30 PM PST" (Ex. K beginning at 0:34);

- Adding a timer for when *The Nuke* would be released (*id.* beginning at 16:48);

- Encouraging people to view her Watch Party instead of *The Nuke* by stating: "If you want to watch it, you know, come enjoy the watch party somewhere else." *Id.* at 23:40-47.

Since Denims was "not advertising a scholarly critique or historical analysis" of TEI's Works, "but instead [sought] to profit at least in part from [the Works'] inherent entertainment value," her use was commercial. *Elvis,* 349 F.3d at 627.

Denims watched long sections of the *Countdown Episode* with little to no interruption for several minutes at a time. ER-108, fn.37

30

(compiling timestamps from Exhibit K). Denims even let the *Countdown Episode* play for 2:21 minutes while she was off camera. Ex. K at 39:18-41:40. Upon returning, Denims was silent for another minute. *Id.* at 41:41-42:41. When she did speak, she provided in total: (1) 4:43 minutes of brief commentary with little to no critical bearing on the original; (2) 43 seconds of partially related commentary; and (3) 2:12 minutes of unrelated or unintelligible comments. ER-109, fns. 38-40 (compiling timestamps from Exhibit K). During the 1:03:56 hour runtime, Denims let the *Countdown Episode* play uninterrupted nearly 88% of the time.

*The Nuke*: Denims' Watch Party of *The Nuke* began one minute after its public release and was shown in its entirety. 2-SER-373, ¶45; Ex. K at 1:15:19. Denims received approximately 45,000 concurrent viewers – the most she had to date. 2-SER-375, ¶46; 2-SER-458-459. On 174 separate occasions, she received paid subscriptions and donations – in addition to advertising revenue. 2-SER-375, ¶47; Ex. K at 1:15:19-5:06:20.

Denims' statements show her purpose was to host a watch party of *The Nuke* by:

- Titling her stream as a "watch party" (2-SER-375-376, ¶48; 2-

31

SER-456-457);

- Stating: "If you want to watch it, you know, come enjoy the watch party somewhere else." (Ex. K at 23:40-47);

- When a viewer stated "We're relying on you to stay live so we don't give more views to the Nuke," Denims replied with: "Yeah, I'm going to" and "We're going to stream it" (Ex. J at 4:48:38-4:48:48);

- Placing a banner on the screen stating she was "Watching" *The Nuke* (Ex. K beginning at 1:15:03);

- When asked by a viewer, she said she was "watching" *The Nuke* (Ex. K at 2:06:09-23);

- Saying she "did not want to watch" *The Nuke* by herself. Ex K at 5:07:45-5:08:09.

Denims' statements reveal her commercial purpose. When her Watch Party ended, she said: "Well guys, if you enjoyed not giving any views to that terrible video, follow, subscribe, throw a prime, if you like the content if you enjoyed your time here" – all while H3Snark was visible on her screen. 2-SER-375-376, ¶48; Ex. K at 5:07:45-5:08:09.

Denims failed to address the majority of points raised in *The*

*Nuke*. 2-SER-273-275, ¶45; ER-118:13-119:27. On 74 separate occasions, she let *The Nuke* play uninterrupted for 30 seconds or more (27 of which were over a minute and one over two minutes). This comprised over 70 minutes of *The Nuke* – *i.e.*, 70% of its total runtime. ER-114:10-117:22 (compiling timestamps from Exhibit K). Denims even told her audience she did not want to pause *The Nuke* more frequently to provide additional commentary. Ex. K at 3:00:53-3:02:09.

When Denims did speak, she frequently made short comments with no critical bearing on the style or substance of *The Nuke*. Examples include: (1) making incoherent statements; (2) speaking with her chat about unrelated topics; (3) going on unrelated tangents; (4) providing brief comments with little to no elaboration; and (5) frequently expressing confusion at what was depicted. ER-120:5-121:16 (compiling timestamps from Exhibit K); ER-123:3-19 (same). While there were moments where Denims did criticize *The Nuke*, the extent of that criticism was insufficient to justify commercially exploiting *The Nuke* in its entirety immediately upon release.

b. **<u>The Second Factor Weighs Against Fair</u>**

**<u>Use</u>**

The second factor examines "the extent to which [the original work] is creative and whether it is unpublished." *McGucken*, 42 F.4th at 1161. When a work "document[s] a real event," the work can still be "creative because [it is] the product of many technical and artistic decisions." *McGucken*, 42 F.4th at 1161. While containing numerous documentary and factual elements, both Works contained numerous creative elements, which makes them creative and weighs against fair use. 2-SER-260, ¶25; 2-SER-317-320; *see generally* Exs. E-F. Further, Denims' exploitation of the Works immediately after their release "does not weigh in favor of fair use." *McGucken*, 42 F.4th at 1162.

c. **<u>The Third Factor Weighs Against Fair</u>**

**<u>Use</u>**

The third factor examines "the quantitative amount and qualitative value of the original work used in relation to the justification for that use." *McGucken*, 42 F.4th at 1162. The third "factor circles back to the first factor because the extent of permissible copying varies with the purpose and character of the use." *Id.*

34

"Copying an entire work militates against a finding of fair use." *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 744 (9th Cir. 2019).

Petitioners conceded that the "third factor weighs against a finding of fair use". ER-44 fn.14. While providing no explanation, the reason is evident: Denims failed to comment on significant portions (if not the majority) of both Works–*i.e.*, her use was grossly excessive.

### d. The Fourth Factor Weighs Against Fair Use

The fourth factor is "undoubtedly the single most important element of fair use." *Harper*, 471 U.S. at 566. Its focus is "on actual or potential market substitution." *Warhol*, 598 U.S. at 536 fn.12. It "encompasses both (1) the extent of market harm caused by the particular actions of the alleged infringer, and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original[.]" *McGucken*, 42 F.4th at 1163. Even when there is "little direct evidence of actual market harm," "to negate fair use," the plaintiff "need only show that if the challenged use should become widespread, it would adversely affect the

35

*potential* market" for the original. *Id.* (original emphasis).

At bottom, the fourth factor "asks whether consumers treat a challenged use 'as a market replacement'" for the original. *National Fire Protection Association, Inc. v. UpCodes, Inc.*, 753 F.Supp.3d 933, 965 (C.D. Cal. 2024). This "factor points against fair use when a copyist makes copies available that displace demand for copies the copyright owner already makes available[.]" *Bartz v. Anthropic PBC,* 787 F.Supp.3d 1007, 1031 (N.D. Cal. 2025).

Petitioners succeeded in driving H3Snark users away from the Works by offering Denims' Watch Party as a substitute. The screenshots below from Denims' chat during her Watch Party dispel any doubt that Petitioners' users viewed Denims' Watch Party as a substitute for the originals.

Simplemoto: Denims, I'd like to thank you from the bottom of my heart, for being willing sabotage your own algo so we can rob him of 4000 views by you streaming it to us instead

Ex. K at 00:13:14.

drfeltcher: Chat make sure you only watch the content nuke on a stream. Don't give engagement for this. It's what he wants

Ex. K at 00:27:25.

proletariatbomb: I appreciate you watching it so i dont have to give ethan a view to wat implode

Ex. K at 00:28:12.



supportingorfeeding: It would be funny af if his nuke lost initial viewers because people their reactions to it today

Ex. K at 28:20.

unlucky_881 Chat watch it with denims don't try to watch it on your own, don't give him

Ex. K at 1:03:57.

NorthBoundTrain: dont watch it on h3's channel

Ex. K at 1:14:23.

verdanteclipse: Never heard of denims before but I wanted to watch the Ethan crash out wit giving him any views. Denims definitely has star power, no wonder she has more live viewers rn.

Ex. K at 3:05:29.

drfeltcher: Chat....remember don't go watch this on Ethan's channel or comment. He hate viewers as well and we shouldn't give them to him

Ex. K at 3:12:26.

CtrlSaltEsc: thank you for providing a way to cringe at the video without feeding it a view

Ex. K at 5:08:07.

jkmoran99: Thank you for helping us avoid the sin of giving Ethan views

Ex. K at 5:08:57.

Her chat further commented on the unprecedented number of

viewers.

Att4ck_Th3_Bl0ck: Did I miss something... are you normally at 39K viewers on your streams?

Ex. K. at 3:47:57.

ChiidishNA: 40k on Denims, 9 hour stream whats going on here

Ex. K at 4:11:55

eliashunterwood whats with the 40k viewers?

Ex. K at 4:18:43.

Denims' chat noted the immediate drop-off in viewers after *The Nuke* stopped playing (Ex. K at 5:06:22) – *i.e.*, the vast majority of viewers were there to watch *The Nuke*, not her.

iAMcashier: instant drop to 8k viwers

Ex. K at 5:07:03

2terrySD: maybe it wasnt viewbots, the view count fell back to 7k straight after

Ex. K at 5:10:03.

Additionally, other individuals identified in Petitioners' 1/30/25 Post and Second 1/31/25 Post hosted watch parties of *The Nuke* and commercially exploited it in its entirety immediately upon release.  2-SER-270-271, ¶33; 2-SER-379-381, ¶¶52-56.  These various watch parties (including Denims' Watch Party) siphoned views, advertising revenue and visibility away from the Works. The harm was particularly acute because the greatest demand for a YouTube video is immediately after its release. 2-SER-270, ¶32.

Therefore, Petitioners fail to show Denims made a fair use of both Works.

38

### 3. The MPJOP Order is Flawed

While this Court is not in a position to review the MPJOP Order finding that Denims' Watch Party of *The Nuke* was a fair use (which is not yet embodied in an appealable order), TEI will briefly discuss it to dispel the idea that it undermines TEI's *prima facie* showing.

To begin, the MPJOP Order only addresses *The Nuke* and not Denims' use of the *Countdown Episode*. Further, TEI intends to appeal the MPJOP Order (and has stated so in a stipulation filed in the Underlying Action on July 6, 2026).

Identifying and addressing all of the errors of the MPJOP Order would require supplemental briefing. Below are some (but not all) of the material errors of the MPJOP:

- The MPJOP Order directly conflicts with *Warhol*. As discussed in Section VI.C.2.a, *supra*, *Warhol* requires that a use be justified in the broad and narrow sense – which necessitates a transformative use of each excerpt used from the original. The MPJOP Order stated the exact opposite.

- The MPJOP Order omitted material facts alleged in the complaint and contained in the attached exhibits, most notably:
  - Denims' Watch Party occurred immediately upon *The*

39

*Nuke*'s release when public interest was at its apex;

o Anything related to Petitioners' conduct in directing H3Snark users to Denims' Watch Party, including the Quash Order's discussion on the same;

o Denims' failure to comment on significant portions of *The Nuke*;

o Denims' numerous statements expressing her intent to host a "watch party" and siphon views away from TEI to herself;

o Significant portions of Denims' statements that had little to no critical bearing on *The Nuke*.

Therefore, the MPJOP Order should not be relied upon. If the Court finds it necessary, it should request supplemental briefing to address the errors of the MPJOP Order.

**D. Petitioners Fail to Show the Balance of Equities Weighs in Their Favor**

To begin, almost all cases where courts found a plaintiff made a *prima facie* showing, the balance of the equities favored disclosure. *See Baugher*, 2021 WL 4942658, *5; *Cognosphere*, 2024 WL 4227594, *7-8; *Barnes*, 2026 WL 412470, *4-5; *Signature*, 941 F.Supp.2d at 1157. Conversely, when the plaintiff fails to make a

40

*prima facie* showing (or fair use applies), the balance of equities always weighs against disclosure (or is not addressed whatsoever).[14] *Twitter*, 608 F.Supp.3d at 881-883; *Reddit 2026*, 2026 WL 1847873, *10; *Reddit 2020*, 441 F.Supp.3d at 882-887. This illustrates *Reddit 2020's* point that the balance of equities is "not well suited for a copyright dispute." *Id.* at 882.

Next, since TEI "successfully demonstrated a *prima facie* claim of copyright infringement and [Petitioners] have not demonstrated fair use, [Petitioners] have little, if any, First Amendment protection against disclosure of their identities." *Baugher*, 2021 WL 4942658, *5. "Courts have found that establishing a *prima facie* case of copyright infringement should weigh in favor of discovery absent other convincing reasons." *Cognosphere*, 2024 WL 4227594, *7.

TEI's sole purpose is to enforce its copyrights. TEI's owners made multiple attempts to ameliorate the Petitioners' concerns by: (1) offering to not speak about Petitioners (so long as it is reciprocated); (2) not publicly disclosing their names; (3) encouraging their audience to refrain from contacting Petitioners in any manner; (4) requiring that

---

[14] The only exception is *Art of Living*, which noted there was "a substantial question" whether fair use applied. 2011 WL 5444522, *6.

41

they make another *prima facie* claim before any other lawsuit or claim against Petitioners can proceed; and (5) narrowing the scope of the Subpoenas. 2-SER-261-262, ¶¶4-5; 2-SER-384-386, ¶¶70, 73-75; 2-SER-463-492; 1-SER-26-27, ¶¶3-4.

Further, the court entertained Petitioners' five submissions of "evidence" purporting to show TEI's bad faith. ER-51-382; 2-SER-510; ER-471-515; 1-SER-176-239; 1-SER-11-17. Not only were these submissions insufficient to tip the equities in Petitioners' favor; they were replete with falsehoods that TEI was forced to debunk. *See* Fns. 3-4, *supra*. Despite this, the Quash Order preserved Petitioners' anonymity in the Underlying Action. ER-15:24-16:3.

Courts also favor disclosure when "the information sought relates to a core claim or defense" and "the identifying information is directly and materially relevant to that claim or defense." *Cognosphere*, 2024 WL 4227594, *3. "[S]eeking information necessary to start any litigation or enforcement proceedings (*i.e.*, the identities of the persons behind the [anonymous] accounts)" is "information sought [that] is directly and materially relevant to a core claim." *Id.*, *7-8. Such information is "critical to the claim, because without the information," a plaintiff "has no starting point for whom

42

to name as a defendant." *Id.*, *8. Therefore, the information sought is essential for TEI to pursue its claims. 2-SER-385, ¶76.

Disclosure is also favored when the "information sufficient to establish or to disprove that claim or defense is unavailable from any other source." *Cognosphere*, 2024 WL 4227594, *3. There are no alternatives to find Petitioners' personal identifying information. 2-SER-386, ¶77.

Therefore, Petitioners fail to demonstrate the balance of equities weighs in their favor.

## VII.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition should be denied.

DATED: July 22, 2026       **Heah Bar-Nissim LLP**

By:    <u>*/s/ Rom Bar-Nissim*</u>
Rom Bar-Nissim
Attorneys for Real Party in
Interest and Plaintiff-
Respondent Ted Entertainment,
Inc.

43

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure ("FRAP") 21(d) and 32(g)(1), counsel certifies that this answering brief contains 7,795 words, excluding the items exempted by FRAP Rule 32(f).

This Motion complies with the formatting, typeface and type-styles requirements of FRAP Rules 32(a)(5) and 32(a)(5-6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font that is double-spaced.

DATED: July 22, 2026                    By: /s/ Rom Bar-Nissim

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the

foregoing Answering Brief to Petition for Writ of Mandamus with the

Clerk of the Court for the United States Court of Appeals for the

Ninth Circuit by using the appellate ACMS system.

DATED: July 22, 2026                    By: /s/ Rom Bar-Nissim