No. 26-3513

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE DOE DEFENDANTS

*Petitioners*,

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

*Respondent,*

TED ENTERTAINMENT, INC.,

*Real Party in Interest.*

On Petition for Writ of Mandamus to the
United States District Court
for the Northern District of California
No. 3:25-mc-80296-SK
Hon. Sallie Kim

**PETITIONERS' REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS**

Karl S. Kronenberger
Jeffrey M. Rosenfeld
Leah Rosa Vulić

KRONENBERGER ROSENFELD, LLP
548 Market St. #85399
San Francisco, CA 94104
(415) 955-1155
karl@kr.law
jeff@kr.law
leah@kr.law

*Attorneys for Petitioners*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...............................................................................................1

I.   TEI's Answer misstates the clear error standard and incorrectly argues there is no controlling authority.................................................................1

   A. The guidelines for granting a writ of mandamus, including the clear error factor, are an adaptable starting point for the Court.....1

   B. Ninth Circuit and Supreme Court authority prohibit the district court's decision. ............................................................................4

      1. Controlling Ninth Circuit authority prohibits the district court's decision to unmask Does without considering Does' First Amendment privilege and the chilling effects of unmasking. ...................................................................4

      2. The district court erred by refusing to analyze fair use, which *Lenz* makes "wholly authorized by the law." ........9

      3. The district court clearly erred by failing to consider the Supreme Court's ruling in *Cox*, which precludes the district court's finding of contributory infringement......12

II.  If the Court holds the Ninth Circuit has *not* addressed a distinct issue raised in this Petition, the issue is necessarily one of first impression, and Does need only show ordinary error...............................................................12

A. The issues raised here are ones of important first impression. ....15

B. The evade-review dynamic is the reason mandamus exists. .......18

III. TEI failed to contest the remaining *Bauman* factors, all of which favor Does. ......................................................................................................19

A. Factor Five: The district court's order raises two important issues of first impression. .......................................................................20

B. Factor Two: Does will be irreparably harmed in a way not correctable on appeal, absent the requested relief. ......................20

C. Factor One: Does have no other adequate means to obtain the relief requested. .........................................................................22

D. Factor Four: The risk of creating an oft-repeated error or persistent disregard of the rules is here. ......................................23

IV. TEI's merits arguments are beyond the scope of mandamus, and, in any event, wrong. .....................................................................................24

A. There is no freestanding "clear error on the facts" argument in mandamus. ..............................................................................24

B. This Court will not reweigh the factual record. ..........................25

V. Applying the correct standards, the district court necessarily would have reached a different result. .........................................................................26

A. Does did not commit contributory infringement. .......................26

B.  Does' use was fair. ....................................................................29

C.  Denims' use was fair, and the underlying court has now so

held. ...........................................................................................31

D.  The balance of equities weighs decisively for Does and

anonymous speech generally. ......................................................31

1.  A *prima facie* showing is not the balancing, and Does

showed concrete evidence of harm. ...............................32

2.  The chilling of free speech and interest in protected First

Amendment expression extends beyond Does................32

3.  TEI's "built-in protections" argument proves the risk....33

CONCLUSION................................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*,
  881 F.2d 1486 (9th Cir. 1989)............................................................. 4

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)............................................................. 7

*Art of Living Foundation v. Does*,
  No. 10-CV-05022, 2011 WL 3501830 (N.D. Cal. Aug. 10, 2011) ..................... 17

*Art of Living Foundation v. Does*,
   No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011)....... 12, 17

*Barnes v. Sea Haw. Rafting, LLC*,
  889 F.3d 517 (9th Cir. 2018)...................................................... 14, 15

*Baugher v. GoDaddy.com LLC*,
  No. MC-19-00034-PHX-JJT, 2021 WL 4942658 (Oct. 22, 2021)................ 31, 33

*Bauman v. U.S. Dist. Ct.*,
  557 F.2d 650 (9th Cir. 1977)............................................................. 3

*Cohen v. U.S. Dist. Ct. for N. Dist. of California*,
  586 F.3d 703 (9th Cir. 2009)........................................................ 27

*Cordoza v. Pac. States Steel Corp.*,
  320 F.3d 989 (9th Cir. 2003)........................................................ 26

*Cox Commc'ns, Inc. v. Sony Music Entm't,
  Inc.*, 146 S. Ct. 959 (2026).........................................................Passim

*De Fontbrune v. Wofsy*,
  39 F.4th 1214 (9th Cir. 2022) ........................................................ 31

*Doe v. 2TheMart.com*,
  140 F. Supp. 2d 1088 (W.D. Wash. 2001)............................................. 9

*Doe v. Cahill*,
  884 A.2d 451 (Del. 2005) ............................................................. 22

*Hernandez v. Tanninen*,
  604 F.3d 1095 (9th Cir. 2010)........................................................ 4

*Highfields Capital Management, L.P. v. Doe*,
  385 F. Supp. 2d 969 (N.D. Cal. 2005) ........................................... 32, 33

*In re Anonymous Online Speakers*,
  661 F.3d 1168 (9th Cir. 2011)...................................................*Passim*

*In re Calderon*,
  98 F.3d 1102 (9th Cir. 1996)........................................................ 20

*In re Cement Antitrust Litig.* (MDL No. 296),
 688 F.2d 1297 (9th Cir. 1982) ................................................................*Passim*
*In re Crain Walnut Shelling, LP*,
 175 F.4th 1069 (9th Cir. 2026) ........................................................................ 26
*In re DMCA Subpoena To Reddit, Inc.*,
 383 F. Supp. 3d 900 (N.D. Cal. 2019) ............................................................ 25
*In re DMCA Subpoena to Reddit, Inc.*,
 441 F. Supp. 3d 875 (N.D. Cal. 2020) ........................................ 7, 24, 31, 34
*In re DMCA Subpoena to Reddit, Inc.*,
 No. 26-MC-80128-TSH, 2026 WL 1847873 (N.D. Cal. June 26, 2026) ............ 34
*In re DMCA § 512(h) Subpoena to Twitter, Inc.*,
 608 F. Supp. 3d 868 (N.D. Cal. 2022) ............................................. 11, 22, 31, 34
*In re Gliner*,
 133 F.4th 927 (9th Cir. 2025) .......................................................................... 10
*In re Grand Jury Subpoena*,
 875 F.3d 1179 (9th Cir. 2017) ........................................................................... 9
*In re Kirkland*,
 75 F.4th 1030 (9th Cir. 2023) ........................................................ 15, 16, 18, 19
*In re Mersho*,
 6 F.4th 891 (9th Cir. 2021) ............................................................................. 16
*In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*,
 148 F.4th 1056 (9th Cir. 2025) .................................................................. 12, 13
*In re United States*,
 884 F.3d 830 (9th Cir. 2018) ........................................................................... 21
*In re Williams-Sonoma*,
 947 F.3d 535 (9th Cir. 2020) ..................................................................... 15, 22
*Lenz v. Universal Music Corp.*,
 815 F.3d 1145 (9th Cir. 2016) .............................................................*Passim*
*McIntyre v. Ohio Elections Comm'n*,
 514 U.S. 334 (1995) ........................................................................................ 10
*Perfect 10, Inc. v. Amazon.com, Inc.*,
 508 F.3d 1146 (9th Cir. 2007) ........................................................................ 22
*Perry v. Schwarzenegger*,
 591 F.3d 1147 (9th Cir. 2010) .............................................................*Passim*
*Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for Dist. of Arizona*,
 156 F.3d 940 (9th Cir. 1998) ........................................................................... 16
*Reno v. ACLU*,
 521 U.S. 844 (1977) ........................................................................................ 22
*San Jose Mercury News, Inc. v. U.S. Dist. Ct.–N. Dist. (San Jose)*,

187 F.3d 1096 (9th Cir. 1999)..................................................................... 15

*Signature Management Team, LLC v. Automatic, Inc.*,
  941 F. Supp. 2d 1145 (N.D. Cal. 2013) ................................................... 12

*Smith v. Clark Cnty. Sch. Dist.*,
  727 F.3d 950 (9th Cir. 2013)...................................................................... 13

*Sony Music Entm't Inc. v. Does 1-40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004)......................................................... 8

*Valenzuela-Gonzalez v. U.S. Dist. Ct. for Dist. of Ariz.*,
  915 F.2d. 1276 (9th Cir. 1990)................................................................. 16

## Statutes

17 U.S.C. §107 ..............................................................................*Passim*
17 U.S.C. §512 ..............................................................................*Passim*
28 U.S.C. §636(c)(1).............................................................................. 23
28 U.S.C. §1291 ...................................................................................... 23
28 U.S.C. §1651(a) ................................................................................. 24

## Rules

Fed. R. Civ. P. 26 .................................................................................... 14
Fed. R. Civ. P. Rule 45 ....................................................................*Passim*
Fed. R. Evid. 501 ...................................................................................... 6

## Other Authorities

16 Fed. Prac. & Proc. Juris. §3935.3 (3d ed.)......................................... 19

## INTRODUCTION

The ability to speak anonymously online promotes the robust exchange of ideas and lets individuals express themselves free from "fear of economic or official retaliation … [or] concern about social ostracism." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("*In re Anonymous Online Speakers*"). This petition asks whether a plaintiff's requirement of a *prima facie* evidentiary showing (including a showing that the use *was not* fair for a copyright claim) and a balancing of the equities, including consideration of the chilling of anonymous speech, may be sidestepped to unmask anonymous critics. The answer is no, and this Court can decide so on mandamus.

## I.  TEI's Answer misstates the clear error standard and incorrectly argues there is no controlling authority.

TEI incorrectly states the clear error standard for mandamus relief and also incorrectly argues there is no controlling Ninth Circuit authority. TEI is wrong on both counts.

### A.  The guidelines for granting a writ of mandamus, including the clear error factor, are an adaptable starting point for the Court.

TEI grossly oversimplifies the legal standard for granting a writ of mandamus. First, "[m]andamus is appropriate to review *discovery orders* when particularly important interests are at stake." *Perry v. Schwarzenegger,* 591 F.3d

1147, 1156–57 (9th Cir. 2010) ("*Perry*") (internal quotation marks omitted)

(emphasis added). Second, as explained in Does' Petition, courts use five factors to

determine whether to grant mandamus. *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650,

654-55 (9th Cir. 1977) ("*Bauman*").

> [However, these] guidelines are cumulative and may not all point to the same conclusion. Moreover, all of the guidelines are unlikely to be met in any one case. Some are more relevant to particular categories of cases than others. Certain concepts relating to the traditional use of mandamus are not necessarily applicable in supervisory mandamus cases, or, at the least, are applied differently. The guidelines are not susceptible of mechanical application; they are not meant to supplant reasoned and independent analysis by appellate courts. In sum, the guidelines serve only as a useful starting point, an analytic framework for determinations regarding the propriety of mandamus relief.

*In re Cement Antitrust Litig.* (MDL No. 296), 688 F.2d 1297, 1301 (9th Cir. 1982)

("*Cement*") (citation omitted). For example, "[r]elated considerations include:

whether the injury alleged by petitioners, although not correctable on appeal, is the

kind that justifies invocation of our mandamus authority;[1] whether the petition

---

[1] "There are, of course, limits to the hardships which litigants will be forced to bear as a result of erroneous interlocutory orders." *Cement*, 688 F.2d at 1303. "We believe that in supervisory mandamus cases, as long as petitioners have demonstrated that they will suffer an actual injury not correctable on appeal, they have satisfied both the injury requirement and the second criterion in the *Bauman* analysis." *Id*. at 1303. In *Hernandez v. Tanninen*, 604 F.3d 1095 (9th Cir. 2010), the Court found the second factor satisfied by a disclosure order adverse to the attorney-client privilege because "an appeal after disclosure of the privileged communication is an inadequate remedy" for the "irreparable harm a party likely

presents an issue of law which may repeatedly evade appellate review;[2] and whether there are other compelling factors relating to the efficient and orderly administration of the district courts." *Id*. at 1301 (footnotes added).

In a tacit admission that the other four *Bauman* factors lean heavily in favor of granting mandamus, TEI hangs its opposition entirely on the alleged lack of "clear error" (the third factor) and emphasizes the demanding nature of this factor. (Ans. at 10-16.) However, while the absence of this factor would be dispositive, *see Perry,* 591 F.3d at 1156, its requirements are not as rigid as TEI portrays. As the Ninth Circuit has explained, "[t]he meaning of the 'clearly erroneous as a matter of law' standard of review is elusive at best, but especially so when a question of law of first impression is involved." *Cement*, 688 F.2d at 1305. In such cases, the Court *can* issue the writ if "[it] sees no legitimate reason for refraining from exercising our supervisory authority where we can determine that an error

---

will suffer if erroneously required to disclose privileged materials or communications." *Id*. at 1101 (quotation cleaned up).

[2] "[I]t is the fifth Bauman factor that implicates our supervisory mandamus authority. . . . [which] is particularly appropriate when an important question of law would repeatedly evade review because of the collateral nature of the issue." *Cement*, 688 F.2d at 1304 (citations and footnotes omitted). Similarly in *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486 (9th Cir. 1989), the Court granted a petition for writ of mandamus where it "raise[d] a significant issue of first impression in this circuit that would elude review absent [the] exercise of supervisory mandamus authority." *Id*. at 1491.

3

has been made but cannot, for whatever reason, characterize the error as 'clearly' erroneous." *Id*. at 1307. Indeed, in the case before it, the Court continued, "Considering the nature of the issue before us, we believe that petitioners would be entitled to a writ were we to be firmly convinced that the district court was incorrect in its interpretation of [the relevant statute]. *Id*.

In sum, this Court's precedents demonstrate that the writ of mandamus was designed for "just such an exceptional circumstance" as that present here. *See Cement*, 688 F.2d at 1300.

**B.     Ninth Circuit and Supreme Court authority prohibit the district court's decision.**

In any event, there *is* binding Ninth Circuit and Supreme Court authority prohibiting the district court's decision.

**1.     Controlling Ninth Circuit authority prohibits the district court's decision to unmask Does without considering Does' First Amendment privilege and the chilling effects of unmasking.**

**First**, this Court has squarely held that compelled disclosure of a speaker's identity is governed by heightened First Amendment scrutiny. *See Perry*, 591 F.3d at 1161-65. In *Perry*, the Ninth Circuit held exercise of its supervisory mandamus authority was appropriate when evaluating the First Amendment privilege and

freedom to speak. *See id.* at 1158-60. Specifically, governmental action, here, the compelled unmasking of anonymous speakers to pursue an alleged contributory copyright infringement claim, itself infringes on the *speakers*' exercise of fundamental rights, and must survive exacting scrutiny. *Id.* at 1159-60. In other words, where a discovery request seeks privileged information, such as an anonymous speaker's identity, the request must meet such scrutiny because to hold otherwise would invade on First Amendment rights to anonymous speech and political association, therefore chilling speech. *See id.* at 1158-59.

In TEI's motion to dismiss Does' direct appeal, D.E. 11.1 in Ninth Circuit Case No. 26-3553, TEI argues that Does' rights in their identities are not a "privilege" recognized under Federal Rule of Evidence 501. (Ninth Circuit Case No. 26-3553 D.E. 11.1, TEI's Mot. to Dismiss at 16-17.) Not so. The Ninth Circuit directly addressed this question, in authority TEI claims does not exist. *Perry*, 591 F.3d at 1158-59. In *Perry*, the Ninth Circuit specifically held a party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment *privilege*. 591 F.3d at 1155-56. The district court thus clearly erred in failing to apply the controlling Ninth Circuit authority of *Perry*, failing to consider the chilling effect of unmasking on Does' (and others') exercise of fundamental rights, and ordering disclosure of Does' identities.

Further, controlling Ninth Circuit precedent also makes clear that the nature

5

of the speech, not the label of the plaintiff's claim, dictates the level of protection in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes. *See In re Anonymous Online Speakers*, 661 F.3d at 1177. The fact that a plaintiff labels its claim as one for "copyright infringement" does not change the required analysis of *Perry* and *In re Anonymous Online Speakers*. It does not mean the court never considers the First Amendment and chilling impact on speech; it should either consider it when deciding the First Amendment protections of the *nature* of the speech *or* the First Amendment protections of fair use.

The district court did not discuss *Perry* or *In re Anonymous Online Speakers*. Instead, it held that First Amendment analysis is not well-suited for a copyright dispute. The district court cited a Northern District of California case, *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 882 (N.D. Cal. 2020) (noting that the test from *Highfields Capital Mngt LP v. Doe,* 385 F. Supp. 2d 969 (N.D. Cal. 2005) (*see* Pet. at 21), "is not well suited for a copyright dispute … because the First Amendment does not protect anonymous speech that infringes copyright"), and a Second Circuit decision on a motion to quash peer-to-peer file-sharing, *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 113 (2d Cir. 2010), subject to the most limited First Amendment protection (*see Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004)). (Order at 4-5.) In doing so, the district

6

court ignored controlling Ninth Circuit precedent and clearly erred by failing to consider the nature of the speech, *i.e.*, a critical subreddit discussing TEI, the Kleins, and political matters, indeed, a political film.[3] In other words, Does' core criticism sits at the top of this scale, and the district court afforded it the least protection of every speaker in the line: none.

Further, the district court clearly erred by failing to look outside Does' own personal harms (which it did not seriously consider) and to the broader effect of allowing the subpoenas to proceed, *i.e.*, chilling anonymous speech, as required by *Perry*, 591 F.3d at 1157-59. "In identifying two ways in which compelled disclosure . . . can deter protected activities—by chilling participation and by muting the internal exchange of ideas—we do not suggest this is an exhaustive list. Disclosures of the sort challenged here could chill protected activities in other ways as well." *Id.* The First Amendment interest at stake in an unmasking dispute is not confined to the movant's personal exposure. Ninth Circuit law directs the Court to consider a wider effect and ask whether compelled disclosure will chill

---

[3] The district court then further eviscerated First Amendment protections by failing to consider fair use before allowing unmasking, completing the error. *See* Section I.2.

anonymous critical speech generally. *See Perry*, 591 F.3d at 1157-59; *In re Anonymous Online Speakers*, 661 F.3d at 1176.

The structure of the doctrine confirms that the interest is community-wide. As an example, the Ninth Circuit recognizes that platforms have third-party standing "to assert the First Amendment rights of [their] users," precisely because of the "genuine obstacles" individual anonymous speakers face in vindicating their own rights. *In re Grand Jury Subpoena*, 875 F.3d 1179, 1183 n.2 (9th Cir. 2017). Consistent with that view, courts guard against "encroaching on the First Amendment rights of *the Internet users*" as a class. *Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088, 1097 (W.D. Wash. 2001) (emphasis added); *accord In re Anonymous Online* Speakers, 661 F.3d at 1176 (noting the district court's "concern[ ] that setting the standard too low will chill potential posters from exercising their First Amendment right to speak anonymously," but denying mandamus because the district court already used the most protective test.) Indeed, Ninth Circuit authority specifically holds: "It is now settled that 'an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.'" *In re Anonymous Online Speakers*, 661 F.3d at 1173 (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)).

"As with other forms of expression, the ability to speak anonymously on the

Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation ... [or] concern about social ostracism.'" *In re Gliner*, 133 F.4th 927, 933 (9th Cir. 2025) (quoting *In re Anonymous Online* Speakers, 661 F.3d at 1173). A rule that permitted unmasking whenever the individual's own showing of harm was modest would run entirely counter to the Ninth Circuit's consistent policy of protecting anonymous speech, and here, Does have shown grave harm.

**2. The district court erred by refusing to analyze fair use, which *Lenz* makes "wholly authorized by the law."**

Next, controlling Ninth Circuit authority makes clear that fair use is not just excused by the law; instead, it is "wholly authorized by the law," so a fair user is "not an infringer." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151-53 (9th Cir. 2016) ("*Lenz*"). *Lenz* analyzed a DMCA subpoena, and held that, because 17 U.S.C. §107 created a type of non-infringing use, the DMCA requires copyright holders to consider whether the potentially infringing material is a fair use of copyright before issuing a takedown notice. *Id.* at 1153.

*Lenz* holds that "[f]air use is [ ] distinct from affirmative defenses where a use infringes a copyright, but there is no liability due to a valid excuse, e.g., misuse of a copyright, and laches." *Id.* at 1153 (internal citations omitted). Further, *Lenz* held that even if fair use is classified as an "*affirmative* defense," fair use is

9

uniquely situated in copyright law so as to be treated differently than traditional affirmative defenses. *See id.*

Applicable here, for an unmasking subpoena, fair use is part of the infringement inquiry, not a deferrable afterthought, because necessarily, a plaintiff cannot make a *prima facie* showing of its claim if the alleged infringement is fair use. *Lenz*, 815 F.3d at 1152–53; *see also In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876, 879 (N.D. Cal. 2022) ("When adjudicating discovery requests that would unmask an anonymous speaker, then, courts must consider the First Amendment implications of disclosure," and "To make a prima facie case of copyright infringement for the purposes of obtaining a subpoena, then, a party must make a prima facie case that the infringing use did not constitute fair use.") In their motion to quash, Does argued that both they and the alleged direct infringer, Alexandar Marwa Saber ("Denims") made a fair use of TEI's works. (MTQ at 20-24; Reply at 9-10.)

TEI cited to a number of *district court* cases for the proposition that the district court did not err by deferring a fair use determination. But, the cases TEI reviewed were almost entirely DMCA subpoena cases (Ans. at 12-16), and two of the lone cases that deferred fair use analysis, *Signature Management Team, LLC v. Automatic, Inc.*, 941 F. Supp. 2d 1145 (N.D. Cal. 2013), and *Art of Living Foundation v. Does,* No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov.

10

9, 2011) ("*Art of Living*"), were decided pre-*Lenz*, so they did not consider *Lenz*'s binding authority that fair use is wholly authorized.

The district court reviewed these different standards (DMCA subpoena versus Rule 45 subpoena), while highlighting the asymmetry between both. (Order at 4-8.) The DMCA requires an initial fair use assessment, as confirmed by *Lenz* at 1153; a sworn declaration that the party seeking identities will only use the identities to pursue copyright claims, 17 U.S.C. §512(h)(2)(C); and is immediately appealable. *See In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*, 148 F.4th 1056, 1061 (9th Cir. 2025). This is at odds with a Rule 45 subpoena, where no such protections exist. Yet instead of following the controlling Ninth Circuit of *Lenz* that fair use is not infringing use at all, the district court decided that fair use analysis could be deferred on a Rule 45 subpoena because fair use would be decided by the underlying court. (Order at 8.) In other words, the district court stripped *all* First Amendment protection, concluding a Rule 45 subpoena requires *less*. (Order at 8.) But that deferral means the analysis will come too late, and contradicts square Ninth Circuit authority in *Perry* and *In re Anonymous Online Speakers*.

By deferring fair use until after Does would already be identified in contradiction to *Lenz*, the district court clearly erred.

**3.      The district court clearly erred by failing to consider the**

**Supreme Court's ruling in *Cox*, which precludes the district court's finding of contributory infringement.**

The district court's failure to consider controlling U.S. Supreme Court authority is clear error. *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) ("[I]t is a clear error of law to not apply controlling Supreme Court precedent[.]"). If the district court had applied *Cox Commc'ns, Inc. v. Sony Music Entm't, Inc.*, 146 S. Ct. 959 (2026) ("*Cox*"), as it was required to do, it would have found that *Cox* forecloses TEI's conclusion that Does are liable for contributory copyright infringement.[4] Indeed, TEI even cites *Cox* in its Answer for the proposition that Does face contributory liability, while conveniently omitting the district court's failure to consider such controlling authority. (Ans. at 19-20.) This clear error was not inconsequential, as discussed *supra* §VI.A.

**II.     If the Court holds the Ninth Circuit has *not* addressed a distinct issue raised in this Petition, the issue is necessarily one of first impression, and Does need only show ordinary error.**

There are exceptions to the general rule that the third factor of "clear error" must be present. *Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517, 537 (9th Cir.

---

[4] Both the district court and TEI were notified of the U.S. Supreme Court's holding in *Cox* by Does' statement of recent decision. Supp. App. 591-620.

12

2018). The exception applies when an "'important issue of first impression'" is raised, shifting the required showing from clear error to ordinary error. *See Perry*, 591 F.3d at 1157. "[I]n light of the fact that the petition presents a question of law of first impression, the resolution of which would have a substantial effect on the orderly and efficient administration of the courts, we might issue the writ even were we simply to conclude that the district court was in error." *Cement*, 688 F.2d at 1307.

Contrary to TEI's claim in its Answer, based on prior cases and the very existence of the fifth *Bauman* factor (*i.e.*, whether the issue presented is one of first impression), the Ninth Circuit has also expressly confirmed that "the necessary 'clear error' factor does ***not*** require that the issue be one as to which there is established precedent." *Perry*, 591 F.3d at 1159 (emphasis added). Indeed, in *Perry*, a case starkly similar to this one, the Ninth Circuit was firmly convinced that the district court erred by limiting the First Amendment privilege and affording no greater protection than the generous relevance standard of Fed. R. Civ. P. 26, in unmasking subpoenas. *See Perry,* 591 F.3d at 1158.

In arguing there is no controlling Ninth Circuit authority, TEI tacitly concedes that this matter is one of first impression (*see* Ans. at 11-16); in that instance, only ordinary, as opposed to clear, error is required. *In re Kirkland*, 75 F.4th 1030, 1041–42 (9th Cir. 2023); *In re Williams-Sonoma*, 947 F.3d 535, 538

(9th Cir. 2020) (citing *Barnes*, 889 F.3d at 537); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.–N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999).

As this Court has recognized, mandamus relief is appropriate to resolve novel and important procedural issues. *In re Kirkland*, 75 F.4th at 1041. Indeed, "[a]lthough 'the courts of appeals cannot afford to become involved with the daily details of discovery [or trial],' we may rely on mandamus to resolve 'new questions that otherwise might elude appellate review[.]'" *Id.* (citing *Perry,* 591 F.3d at 1157).

This case presents circumstances analogous to those in *Perry*, where this Court determined that "the very existence of the fifth *Bauman* factor, whether the issue presented is one of first impression—illustrate[s], the necessary 'clear error' factor does not require that the issue be one as to which there is established precedent." *Perry,* 591 F.3d at 1157. Moreover, this novel and important question may repeatedly evade review, as has been evidenced by the various inconsistencies in TEI's cited authorities. *Id.* (citing *Cement,* 688 F.2d at 1304–05 ("[A]n important question of first impression will evade review unless it is considered under our supervisory mandamus authority. Moreover, that question may continue to evade review in other cases as well.")).

**A.    The issues raised here are ones of important first impression.**

14

The Ninth Circuit has identified several overlapping characteristics that establish whether a legal question qualifies as a new and important issue of first impression under the fifth factor.

The most fundamental requirement is that the Ninth Circuit has not yet addressed the specific legal question at issue. The Ninth Circuit has found the fifth factor satisfied when there were "no cases from the Ninth Circuit guiding district courts" on how to consider a distinct, specific issue, even though many district courts had already been grappling with the issue. *See In re Mersho*, 6 F.4th 891, 903 (9th Cir. 2021). The existence of prior circuit precedent on a related, but distinct, question does not defeat the first-impression character of a genuinely novel sub-issue. *See Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for Dist. of Arizona*, 156 F.3d 940, 946 (9th Cir. 1998) (The "mere fact that a case presents a hitherto unexamined set of circumstances has prevented neither the United States Supreme Court nor this Court from reaching the merits of [mandamus]".).

The fifth factor is also satisfied when a settled rule is applied to a genuinely new factual or technological context; "[m]andamus is particularly appropriate when we are called upon to determine the construction of a federal procedural rule in a new context." *In re Kirkland*, 75 F.4th at 1041 (quoting *Valenzuela-Gonzalez v. U.S. Dist. Ct. for Dist. of Ariz.*, 915 F.2d. 1276, 1279 (9th Cir. 1990)) (finding the fifth *Bauman* factor strongly weighed in favor of exercising mandamus; the

issue, whether FRCP Rule 45(c)'s 100-mile geographic limitation applies when a witness testifies by contemporaneous video transmission, was of ongoing importance and novelty and ongoing confusion in the district courts and likely to continue to evade review). Here, the issues presented are (a) whether a district court must find a plaintiff made a *prima facie evidentiary* showing of its claim, based on real evidence and not merely the complaint allegations and characterizations, (b) whether a district court must consider fair use in a Rule 45 unmasking subpoena, rather than defer it[5], and (c) whether a district court must balance the equities. These are issues TEI argues are not squarely addressed by Ninth Circuit precedent (Ans. at 11-16), even though the issues involved (that identities are privileged in the context of the First Amendment, where unmasking speakers will chill free speech (*Perry*); that the nature of the speech guides the

---

[5] TEI argues that *Art of Living Foundation v. Does*, No. 10–CV–05022–LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) refused to conduct a fair use analysis because there was a pending summary judgment motion on that issue. (Ans. at 15.) This is incorrect. The *Art of Living* court did not address fair use because it conducted the balancing of the equities test *first*, and quashed the subpoena without reaching fair use analysis *at the subpoena stage*. The *Art of Living* court's note that "the circumstances here create a substantial question as to whether the doctrine applies," was in *favor* of the anonymous speakers' fair use there. *Art of Living,* 2011 WL 5444622, at *6. Additionally, TEI cites a *prior Art of Living* decision, 2011 WL 3501830 (N.D. Cal. Aug. 10, 2011) (Ans. at 12), that was overturned by *Art of Living Foundation v. Does*, No. 10–CV–05022–LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011).

inquiry (*In re Anonymous Online Speakers*); and that fair use is wholly authorized by the law, to defeat a copyright infringement claim (*Lenz*)), are addressed by Ninth Circuit authority.

In analyzing the fifth *Bauman* factor, the Ninth Circuit considers practical significance of the issue and likelihood of recurrence, as well as conflict or uncertainty among lower courts. TEI acknowledges that district courts have undertaken vastly different analyses. (*See* Ans. at 11-16, collecting cases.) TEI acknowledges that district courts within the Ninth Circuit are not uniform in their treatment of the balancing test. (Ans. at 11-16.) TEI also argues that "there is no uniformity on the role of fair use." (Ans. at 11-16.) But this is the precise logic that makes the specific issue of unmasking an alleged copyright infringer on a Rule 45 subpoena an issue this Court must consider. The issues are particularly important where they are likely to arise with greater frequency going forward, affecting multiple litigants and courts before appellate review becomes possible—if it ever does. *See In re Kirkland*, 75 F.4th at 1047-48.

For the above reasons, if the Court decides there is no controlling Circuit authority on these distinct issues, Does have established that they are important issues of first impression which the district courts have applied conflictingly.

**B.**     **The evade-review dynamic is the reason mandamus exists.**

17

An additional consideration reinforcing importance is whether the issue is likely to evade ordinary direct appellate review, making mandamus the only realistic vehicle for obtaining authoritative circuit guidance. *See In re Kirkland*, 75 F.4th at 1051; *Perry*, 591 F.3d at 1159. Finding a matter of first impression here is especially important in the discovery context, because such questions "may repeatedly evade review." *See Perry*, 591 F.3d at 1156-57, 1159 ("Although 'the courts of appeals cannot afford to become involved with the daily details of discovery,' we may rely on mandamus to resolve 'new questions that otherwise might elude appellate review' or 'to protect important or clear claims of privilege),'" citing 16 Fed. Prac. & Proc. Juris. §3935.3 (3d ed.), §3935.3 Mandamus Use in Civil Action—Discovery Orders; *In re Anonymous Online Speakers* at 1175 (recognizing the "paucity of appellate precedent" in discovery disputes).

The conclusion is axiomatic here. Rule 45 subpoena rulings rarely reach this Court, and disclosure of identity is irreversible once it occurs. Colliding with the second *Bauman* factor, a discovery dispute that causes irreparable injury cannot be correctable after a final determination. If there is absence of Circuit authority directly on point for a Rule 45 subpoena, it is therefore not a reason to withhold the writ; it is the reason the writ is necessary. *See In re Calderon*, 98 F.3d 1102, 1106 n.2 (9th Cir. 1996).

18

Here, Does have filed a direct appeal, and filed their petition for mandamus as a protective measure in the event the Ninth Circuit holds it does not have direct appellate jurisdiction. (Ninth Cir. Case No. 26-3553.) Indeed, TEI has moved to *dismiss* that appeal (without challenging Does' primary argument for appellate jurisdiction). (Ninth Cir. Case No. 26-3553 D.E. 11-1.) If the direct appeal is dismissed and this Court does not grant mandamus, the issue will never reach appellate review.[6]

For all of the above reasons, should this Court find that the controlling precedent of *Perry, In re Anonymous Online Speakers, Lenz,* and *Cox* does not directly reach the specific issues addressed by the district court, it should find ordinary error under the fifth *Bauman* factor and grant the writ accordingly.

## III. TEI failed to contest the remaining *Bauman* factors, all of which favor Does.

Notably, TEI fails to address the other *Bauman* factors, which all favor Does.

### A. Factor Five: The district court's order raises two important issues of first impression.

---

[6] No stay was sought below or in this Court because TEI agreed not to enforce the subpoenas while the appeal(s) are pending.

19

As discuss in Section II, this Court relies on supervisory mandamus "when there is a 'novel and important question' that 'may repeatedly evade review.'" *See In re United States*, 884 F.3d 830, 837 (9th Cir. 2018). Following the district court's order, three such questions are present: (1) what *prima facie* showing is required when a Rule 45 subpoena, rather than a DMCA subpoena, seeks to identify anonymous speakers on a contributory copyright infringement theory; (2) whether a court must consider fair use in analyzing a Rule 45 subpoena seeking to unmask an anonymous speaker; and (3) what level of First Amendment protection is required in such a case.

And as TEI concedes, there is an absence of uniformity in the case law applicable to the issues presented here, making it more likely that the important questions raised by Does in this Petition are likely to evade review. (Ans. at 11-16.) As such, this factor weighs in favor of Does and granting this Petition.

B.      **Factor Two: Does will be irreparably harmed in a way not correctable on appeal, absent the requested relief.**

Does will be irreparably harmed, absent the requested relief. As this Court has recognized, mandamus is appropriate where a discovery order threatens disclosure that will moot the protected interest before appeal. *In re Williams-Sonoma, Inc.*, 947 F.3d at 538-40. That is precisely the case here.

20

By deferring consideration of a fair use analysis to the Central District, the district court's Order effectively ignored "that speech over the internet is entitled to First Amendment protection." *See In re Anonymous Online Speakers* at 1172-73; *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005) (citing *Reno v. ACLU*, 521 U.S. 844 (1977)). Such First Amendment protection also extends to anonymous speech online. *See In re Anonymous Online Speakers* at 1172-73; *Cahill*, 884 A.2d at 456 (Del. 2005), citing *Reno*, 521 U.S. 884. Any fair-use analysis, under either *Highfields* or the DMCA framework, is what safeguards Does' anonymity by ensuring TEI can state a *prima facie* claim of copyright infringement against Denims and, in turn, a claim of contributory infringement against Does. *Lenz* at 1152-53 ("[A]nyone who . . . makes a fair use of the work is not an infringer of the copyright with respect to such use."); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (there can be no contributory infringement without direct infringement).

Deferring the fair use inquiry to the Central District is not an option because "a speaker c[annot] assert their right to anonymity after their identity has been revealed; at that point, the damage will have been done." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 877. If the district court is permitted to abdicate its responsibility to conduct a fair use inquiry, by the time the CDCA performs the analysis, Does will have already been deprived of their First

21

Amendment protections. Absent the requested relief, Does' anonymity will be stripped with no adequate remedy by which to recover it. Indeed, the Central District of California has now *found* that Denims made a fair use as to one of the works, and TEI has dismissed its direct infringement claim as to the other work. (Ans. at 10.) Moreover, the district court here never considered whether *Does'* use was fair. (Order at 7-8.)

Does will clearly be irreparably harmed in a way not correctable on appeal, absent the requested relief.

### C. Factor One: Does have no other adequate means to obtain the relief requested.

To avoid irreparable injury, Does have concurrently filed a Notice of Appeal from the Order and the instant Petition. (Pet. at 34.) The appeal rests on three theories of appellate jurisdiction: (1) finality under 28 U.S.C. §1291 given the parties full consent jurisdiction to magistrate judge jurisdiction under 28 U.S.C. §636(c)(1); (2) the *Perlman* doctrine; and (3) the collateral order doctrine. *See id.* Both the direct appeal and mandamus avenues are necessary; neither alone is adequate.

The circumstances here present a unique posture. Critically, if this Court determines jurisdiction over the appeal is lacking, mandamus under 28 U.S.C. §1651(a) is the only path. And even if this Court determines appellate jurisdiction

22

exists, the relief requested remains necessary because Reddit and Discord may comply with the Subpoenas on a normal timeline. Put differently, Does will suffer irreparable harm, through loss of their anonymity, before any ordinary or even expedited appellate schedule allows review.

Irrespective of either avenue, Does have no other adequate means to preserve their anonymity besides the requested relief. Without the requested relief, Does' constitutional interest in anonymous speech online will be stripped with no avenue to regain it, leaving mandamus as the only practical means available to Does. These are the precise extraordinary circumstances justifying this Court's power to issue the requested supervisory writ.

### D. Factor Four: The risk of creating an oft-repeated error or persistent disregard of the rules is here.

The district court's order shows this matter concerns an oft-repeated error. Indeed, the same magistrate judge who issued the Order was reversed for analyzing fair use, but still refusing to quash the subpoena on the balancing of the harms. *See In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875 (N.D. Cal. 2020).

As in *In re DMCA Subpoena To Reddit, Inc.*, 383 F. Supp. 3d 900, 905 (N.D. Cal. 2019), *report and recommendation rejected sub nom. In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875 (N.D. Cal. 2020), the magistrate judge repeats her errors here. Specifically, here, the magistrate judge refused to

balance the equities, as controlling authority requires, a recurrence that supports the Does' requested mandamus relief.

Further, TEI's own concession that "there is no uniformity on the role of fair use" in district court decisions in this Circuit (Ans. at 14), shows the risk of creating an oft-repeated error and/or persistent disregard of the rules, warranting mandamus.

## IV. TEI's merits arguments are beyond the scope of mandamus, and, in any event, wrong.

TEI spends much of its Answer arguing the merits in a section that refers to a "Clear Error Standard on the Facts." (Ans. Section VI.) There is no such standard in a mandamus proceeding, and TEI's request for this Court to reweigh the merits here fails.

### A. There is no freestanding "clear error on the facts" argument in mandamus.

TEI invokes a theory of mandamus review that does not exist. The Ninth Circuit, on a petition for mandamus, does not entertain a factual challenge. In any event, TEI prevailed on the motion to quash. *In re Crain Walnut Shelling, LP*, 175 F.4th 1069, 1080 (9th Cir. 2026) ("Crain Walnut's arguments effectively amount to a disagreement with the district court's factual conclusions, which falls short of establishing that the district court made the 'clear error' required for a writ of

24

mandamus to be granted."); *Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 1001 (9th Cir. 2003) ("This attack at best raises a factual dispute, not the prospect that the district court made a clear error requiring a writ of mandamus.")

In asking this Court to re-examine the facts, TEI is improperly attempting to expand the mandamus proceeding beyond the specific legal challenges raised in Does' petition. *See Crain Walnut Shelling,* 175 F.4th at 1080; *Cordoza*, 320 F.3d at 1001.

**B.      This Court will not reweigh the factual record.**

TEI effectively asks this Court to conduct a de novo reweighing of the record, including a determination of fair use, a question of law the NDCA expressly declined to reach, and which the CDCA has now decided in Denims' favor. In particular, TEI claims that Denims engaged in direct infringement, despite the Central District's **determination** that her use was fair. (Ans. at 17-18.) Notably, TEI omits fair use from its description of "copyright infringement." *See id.* But whether the Ninth Circuit should decide an issue that the Northern District of California squarely refused to answer, and that another district court has now *answered against* TEI, is not appropriate for this mandamus petition. *See Cohen v. U.S. Dist. Ct. for N. Dist. of California*, 586 F.3d 703, 712 (9th Cir. 2009).

To the extent TEI asks this Court to correct an "error" that occurred, if at all, in an entirely separate proceeding, it is improper. TEI's factual and fair-use

25

arguments are improper counter-arguments and should not be entertained. *See Cohen*, 586 F.3d at 712. Nonetheless, even if the Court reaches them, Does would prevail.

## V. Applying the correct standards, the district court necessarily would have reached a different result.

Had the district court applied the correct Ninth Circuit standards, it would have reached a different result, as follows.

### A. Does did not commit contributory infringement.

In *Cox*, the Court held that contributory liability cannot rest on knowledge of copyright infringement alone. *Cox*, 146 S.Ct. at 969 ("[C]ontributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it"). Rather, contributory copyright infringement liability requires inducement of users' infringement or providing a service tailored to infringement *Id.* at 968. Neither is present here.

As in *Cox*, Does "did not 'induce' or 'encourage' its subscribers to infringe in any manner." *Cox*, 146 S.Ct. at 968. Does' acts were maintaining the Subreddit in which they posted the Megathreads to aggregate discussions concerning the Works. (Pet. at 5-10.) Does simply posted links to the Twitch and YouTube landing pages of content creators who would be reacting to the Works. (Pet. at 5-10.) Does did not coordinate with Denims about her decision to react to the Works,

26

and the fact that TEI conducted discovery with Denims and found *no evidence* of coordination proves it. (Pet. at 9-10.) Nor did Does watch Denims' stream, or any other live reaction stream to the Works. (Pet. at 9-10.) These actions do not "'evidence of express promotion, marketing, and intent to promote'" Denims' or anyone else's infringement. *Cox*, 146 S.Ct. at 968. In fact, Does expressly discouraged such copyright infringement by removing infringing content, updating moderation policies, and implementing an automated copyright disclaimer that appeared on every post, the "AutoMod Disclaimer." (Pet. at 6.) Thus, Does did not induce or encourage Denims' purported copyright infringement.

Does also did not provide a service tailored to infringement; they were moderators of the Subreddit. (Pet. at 4-5.) The Subreddit was created for critics of Ethan Klein and the H3 Podcast; and served as a space where such critics could discuss the Kleins, their political views, and political and current events, topics often covered on the H3 Podcast. (Pet. at 4-5.) In other words, the Subreddit provided the service of a public forum where users could anonymously discuss Ethan Klein's conduct and commentary, including about the ongoing conflict in the Middle East. (Pet. at 4-5.) This is not a case where the service provided was only capable of infringing uses. To the contrary, as a public forum designed for anonymous discourse, the Subreddit "was clearly 'capable of "substantial" . . . noninfringing uses.'" *Cox*, 146 S.Ct. at 968.

27

TEI argues Does fail to refute its *prima facie* showing of contributory copyright infringement. (Ans. at 17.) Not so. TEI's *prima facie* showing rests on the flawed premise that Does *knew* Denims' reaction video would infringe on the Works. But at the time the Megathreads were posted, Does knew *only* that Denims was going to stream reaction videos of the Works, nothing more. (Pet. at 7-10.) There is no indication that Does knew Denims' (or any other content creator's) streams or reaction videos would infringe on the Works when the Megathreads were posted. (Pet. at 7-10.) Indeed, reaction videos are incredibly common in the content creation industry, and TEI's principals themselves claim to have pioneered fair-use reaction videos. (Ans. at 3.)

As such, Does could not have known, and in fact *did not* know, of any infringement. TEI's argument is a thinly veiled attempt to state a *prima facie* claim of contributory infringement against Does with the benefit of hindsight. This is shown by the fact that TEI specifically decided *not* to notify Does of any claimed infringement despite its attorney monitoring the Subreddit. (Pet. at 10.) But even if Does were aware of any claimed infringement, knowledge alone is insufficient to establish contributory liability. *Cox*, 146 S.Ct. at 969.

Accordingly, if the district court had considered *Cox*, as it was required to, the district court would have determined TEI could not establish its *prima facie* case of contributory infringement against Petitioners because: (1) they did not

28

induce or encourage infringement; (2) did not provide a service tailored for infringement; and (3) even if they knew of any purported infringement, contributory liability cannot rest on knowledge alone.[7]

## B.     Does' use was fair.

The district court did not address Does' fair use, but it is clear that their use was fair.

Does' Megathreads were a fair use under 17 U.S.C. §107 where Does referenced the works for criticism and commentary fundamentally at odds with TEI's original purpose of Nuke, making their use transformative. (MTQ at 20:5-9; Reply 9:6-19.) *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d at 884. Does' use was not for a commercial purpose; Does never financially benefitted or received any compensation for moderating H3Snark, or for linking to content. *See*

---

[7] The Order's reliance on "hate-watching" illustrates the defect. The court drew the term not from a standard dictionary but from an Urban Dictionary entry. The court omitted the definition that resolves the point: Merriam-Webster defines "hate-watch" as "to watch and take pleasure in laughing at or criticizing (a disliked television show, movie, etc.)." Hate-watch, Merriam-Webster. Both sources center the criticism and comment that fair use protects. *See* 17 U.S.C. §107. So too with the court's "ethical viewing" characterization: neither "hate-watching" nor "ethical viewing" is language the Does used; both trace to TEI's conclusory complaint allegations and self-serving declaration (about "snarkers" generally). (Order at 9-10; 2-SER-268 (JKD Decl. ¶21).) The court thus recited a phenomenon it did not accurately define, then treated it as evidence of infringing purpose, the same recite-but-misapply error that pervades the Order.

*id*. The nature of Nuke was highly factual, weighing in Does' favor; and, Does did not use *any* portion of the works in the Megathreads. (MTQ Ex. 1, Compl. Exs. G-I.) Finally, no one would have viewed the Megathreads and conversation thereon as a substitute for watching Nuke that would have created an effect on the potential market for it.

*De Fontbrune v. Wofsy*, 39 F.4th 1214 (9th Cir. 2022), is distinguishable. Does did not reproduce TEI's works at all, and Does did not "implicitly invit[e]" criticism, *Baugher v. GoDaddy.com LLC*, No. MC-19-00034-PHX-JJT, 2021 WL 4942658, at *4 (Oct. 22, 2021); instead, the entire purpose of the Megathreads, and the Subreddit generally, was a forum for criticism and discussion of Nuke. *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 878 ("[It] is possible for a speaker's interest in anonymity to extend beyond the alleged infringement."). Through and on the Subreddit and the Megathreads, Does and r/h3snark users engaged in legitimate discussion of transformative reactions to Nuke; the Megathreads were not just an implicit invitation. (*See* Compl. Exs. G-I.) Thus, Does' use was fair.

## C. Denims' use was fair, and the underlying court has now so held.

The district court held that the underlying court, *i.e.*, the Central District of California, should decide fair use in the first instance. (Order at 8.) The CDCA has now done so as to *Nuke*, finding Denims' use was fair. (Ans. at 10.) Having so

30

decided, TEI now complains that the CDCA's decision was "flawed." (Ans. at 39-40.) But TEI's attempt to relitigate that finding through Does' mandamus action fails.[i]

### D. The balance of equities weighs decisively for Does and anonymous speech generally.

The test is sequential: only if the plaintiff makes a *prima facie* showing does the court reach the balancing. *In re Anonymous Online Speakers*, 661 F.3d at 1174-75; *Highfields*, 385 F. Supp. 2d at 976. A *prima facie* showing does not automatically resolve the balancing in the plaintiff's favor; that would collapse the standard into bare "good cause."

#### 1. A *prima facie* showing is not the balancing, and Does showed concrete evidence of harm.

TEI's answer infers from the correlation (disclosure usually follows a *prima facie* showing) that the threshold showing is the balancing. (Ans. at 40-42.) That confirms the two steps rather than collapsing them: in cases TEI relied on, the court performed a separate balancing after the threshold assessment. What varied was the speaker's second-step showing of harm.

The court reaches balancing "if, but only if" a *prima facie evidentiary* showing is made, *Highfields*, 385 F. Supp. 2d at 976, then independently weighs the harms with the nature of the speech as context, *Anonymous Online Speakers*,

661 F.3d at 1177. Disclosure issued in *Baugher* only because those speakers made no second-step harm showing on a thin record, 2021 WL 4942658, at *4–*5 & n.2.

Here, unlike the speaker in *Baugher*, Does: (1) demonstrated on real evidence that their speech was First Amendment-protected and fair use, and (2) came forward with concrete evidence of harm, so even crediting a *prima facie* showing and *without* analyzing fair use, the second-step balance tips against disclosure.

### 2. The chilling of free speech and interest in protected First Amendment expression extends beyond Does.

The court must look beyond the speakers' own conduct, in context. *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 880 (placing a work in the context of comments about the person, a Doe defendant gave the photos a new meaning, falling squarely within Section 107's examples of fair use, particularly "criticism" and "comment"), and beyond the speakers themselves, to the broader chilling effect on anonymous speech. *Perry*, 591 F.3d at 1155-56. Attempts to chill such speech are ongoing, *see, e.g., In re DMCA Subpoena to Reddit, Inc.*, No. 26-MC-80128-TSH, 2026 WL 1847873, at *7 (N.D. Cal. June 26, 2026) (citation omitted). If TEI's authority shows anything, it's that the district courts are confused, applying varying standards, likely to repeat and evade appellate review.

32

### 3. TEI's "built-in protections" argument proves the risk.

TEI invokes DMCA-subpoena safeguards, *i.e.*, a sworn averment that the subpoena is solely to enforce copyright, while having issued a Rule 45 subpoena that carries none of these safeguards. (Ans at 41-42.) Instead, TEI offers to "require[ ] itself" to make another *prima facie* showing before any further suit against Does. *Id.* This only confirms TEI intends to pursue claims beyond copyright once it has Does' identities. TEI's entire lawsuits and subpoenas are a pretext, and why the Ninth Circuit should act now: copyright is regularly being used to silence critical speech.

### CONCLUSION

The Court should grant Does' Petition for Writ of Mandamus.

Respectfully Submitted,

DATED: July 29, 2026      **KRONENBERGER ROSENFELD LLP**


         s/ Leah Rosa Vulić
         Karl S. Kronenberger
         Jeffrey M. Rosenfeld
         Leah Rosa Vulić

         *Attorneys for Petitioners Does*

33

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure ("FRAP") 21(d) and 32(g)(1), counsel certifies that this Reply in Support of Petition for Writ of Mandamus contains 7,771 words, excluding the items exempted by FRAP 32(f).

This Reply in Support of Petition for Writ of Mandamus complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.

DATED: July 29, 2026                    By:    s/ Leah Rosa Vulić

# CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing Petitioners' Reply in Support of Petition for Writ of Mandamus and accompanying Supplemental Appendix with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I further certify that a copy of Petitioners' Reply in Support of Petition for Writ of Mandamus and accompanying Supplemental Appendix is being served on all parties to the district-court proceeding, and that a copy is being provided to the Honorable Sallie Kim, United States Magistrate Judge, as required by Federal Rule of Appellate Procedure 21(a).

DATED: July 29, 2026                    By:    s/ Leah Rosa Vulić

_____